STILLWELL WELDING COMPANY,
Appellant (Plaintiff),

v.

COLT TRUCKING and Uintah
Freightways, Appellees
(Defendants).

No. 86–258.

Supreme Court of Wyoming.

Aug. 24, 1987.

Roger Cowan, Harris & Harris, Evanston, for appellant.

Timothy O. Beppler, Vehar, Beppler, Jacobson, Lavery & Rose, P.C., Evanston, for appellees.

Before BROWN, C.J., and THOMAS, CARDINE, URBIGKIT and MACY, JJ.

THOMAS, Justice.

The initial question to be resolved in this case is whether the failure of a lessee of semi-trailer equipment to cause the lessor to be a named insured on its insurance policy as required by the lease contract resulted in a material breach of the contract. The trial court ruled that this failure did not result in a material breach justifying rescission by the lessor. If that conclusion is correct, we then must decide whether damages must be determined in accordance with the Uniform Commercial Code, §§ 34–21–101, et seq., W.S.1977, particularly §§ 34–21–290 through 34–21–296. Finally, there is a question of whether the evidence is sufficient to sustain the damages which were awarded to the lessee by the trial court because of the repossession of the leased trailer by the lessor. We conclude that no error occurred with respect to the trial court's decision, and we affirm it.

Stillwell Welding Company (hereinafter Stillwell) states the issues in its Brief of Appellant to be:

"I. Whether appellee's failure to provide insurance as required by the express terms of the lease agreement entitled appellant to repossess the leased property without incurring liability to appellee.

"II. Whether appellee's proof of damages upon the counterclaim was remote and speculative and not susceptible of ascertainment with a reasonable degree of certainty.

"III. Whether the proper measure of damages was utilized by the court in its award on the counterclaim."

The statement of issues presented by the appellees, Colt Trucking Company (hereinafter Colt) and Uintah Freightways (hereinafter Uintah), is:

"I. Whether there was sufficient evidence for the court to determine that appellant had wrongfully repossessed certain equipment from appellees?

"II. Whether the court erred in its award of damages resulting from appellant's wrongful repossession?"

Colt leased a lowboy trailer with an extension from Stillwell. The record indicates that this equipment was treated as one unit, although the lowboy trailer and the extension had separate serial numbers. The lease commenced February 1, 1984, and the term continued until February 1, 1987. The lease required Colt to pay $53,039.88 in monthly installments of $1,473.33, which were payable in advance for each month. By a second document, Stillwell gave Colt an option to purchase the trailer at the end of the lease term for an additional payment of $3,000. Colt began using the trailer in February of 1984, and it was in Colt's possession until April, 1985, when it was repossessed, without notice, by Stillwell.

Stillwell initially gave as its reason for repossession of the trailer Colt's failure to make the rental payments. Colt, however, was current in the rental payments and had paid through April of 1985. Furthermore, after the trailer was repossessed, Colt made the required monthly lease payments through January of 1986, and these were accepted by Stillwell. Apparently, upon learning that its stated reason for repossession was not valid, Stillwell gave as another reason the failure of Colt to comply with the provisions in the lease which required that Stillwell be named as the insured or an insured on the insurance policy or policies covering the trailer. Colt and Uintah did not learn that the failure to name Stillwell as an insured was the reason for repossession until shortly before trial.

The Lease Agreement provided with respect to insurance:

"9. *Insurance:* Lessee will place in effect, before any equipment covered by this lease is used or operated, such insurance as is necessary to insure the lessor for and against any liability and/or loss for injury or death to any person or persons, and/or for damage to any property resulting from or arising out of the use, possession, or operation by Lessee of any equipment hereby leased, with minimum limits of One Million Dollars ($1,000,000.00) for any one person and Five Hundred Thousand Dollars ($500,000.00) in any one accident for over the road equipment and similar coverage under general comprehensive liability for equipment not used on the highway, and as is necessary to insure Lessor for the full value thereof less $500.00 deductible against loss to it or damage to any said equipment resulting from collision of, fire to, theft of, or other casualty to any such motor vehicle, or equipment or accessories, while in the possession of Lessee. At Lessee's cost and expense, Lessee will keep and maintain such insurance in effect during the continuance of the Lease, and until each of said equipment hereby leased is returned to Lessor. *Lessor shall be specifically named as the, or as an, insured in each covering note or policy evidencing such insurance,* which shall be in such company or companies and in such limits or amounts as are satisfactory to Lessor. Each covering note or policy issued for such insurance, or a certificate thereof, shall forthwith be deposited with Lessor at the aforesaid District Office, and the issuing insurance company directed to give notice to Lessor of any cancellation of such insurance.

"10. *Lessor's Right to Pay:* If Lessee fails to insure said Leased Property, or to pay and discharge all fees and taxes charged or assessed thereon, or for the use thereof, as hereinbefore provided, the *Lessor, without prejudice to any other right hereunder, may cause said Property to be insured,* or may pay and discharge such fees and taxes, and *Les-*

*see agrees to repay said sums to Lessor immediately upon demand."* (Emphasis added.)

It is clear that Stillwell was not named as the insured or an insured on the policy obtained by Colt. The record demonstrates that Colt advised Stillwell of the fact of insurance and explained to Stillwell that Colt's insurance agent had advised Colt not to name Stillwell as an additional insured on the policy. These events occurred fairly early in the period of the lease, and Colt believed the matter had been resolved.

This action was initiated by Stillwell against Colt and Uintah for an accounting for amounts due under various equipment leasing agreements and for damages. In their Answer and Counterclaim, Colt and Uintah sought damages for the unlawful repossession of the lowboy trailer and extension together with damages for loss of use of the property. Following trial and the submission of written closing arguments by the parties, the district court entered judgment in favor of Stillwell on its complaint in the amount of $7,312.49, reduced by an offset in the amount of $1,203.04. The trial court then awarded Colt and Uintah judgment on their counterclaim in the sum of $37,459.97. Stillwell appeals from that judgment but only as to the amount awarded on the counterclaim. No appeal has been taken with respect to the judgment in favor of Stillwell.

The district judge concluded that there had been no material breach of the lease contract which justified the repossession of the lowboy trailer and extension by Stillwell. Relying upon general contract principles, Stillwell argues that it was improper for the trial court to find a technical default with respect to the provisions of the lease but to hold that the technical default did not constitute a material breach. Stillwell insists that the failure of the trial court to enforce the contract according to its terms is contrary to cases such as *Sagebrush Development, Inc. v. Moehrke,* Wyo., 604 P.2d 198 (1979) and *Quin Blair Enterprises, Inc. v. Julien Construction Company,* Wyo., 597 P.2d 945 (1979).

We have no reason to adjust the legal principles articulated in the decisions of this court which are cited by the appellant. This court also has held, however, that in order to warrant a termination or repudiation of a contract, a breach must be substantial and material. E.g., *Cady v. Slingerland,* Wyo., 514 P.2d 1147 (1973); *Anderson v. Bell,* 70 Wyo. 471, 251 P.2d 572 (1952). We are persuaded by the rationale of *Tumbarello v. Byers,* 37 Colo. App. 61, 543 P.2d 1278 (1975), in which the court, applying contract provisions similar to those quoted above, held that it was incumbent upon a lessor seeking to terminate the lease contract to not only demonstrate the failure to name the lessor as an additional insured on the policy, but if that requirement was not met by the lessee, then to obtain its own insurance in accordance with a provision similar to paragraph 10 of this Lease Agreement and establish the refusal of the lessee to compensate for the cost of the policy. The record is clear that Stillwell did not do that in this instance, and we agree with the finding to be implied from the general finding in this judgment (*Burk v. Burzynski,* Wyo., 672 P.2d 419 (1983)) that there was no material breach of the Lease Agreement.

We also are satisfied that this result comports with Restatement (Second) Contracts § 241 (1979), which provides:

"In determining whether a failure to render or to offer performance is material, the following circumstances are significant:

"(a) the extent to which the injured party will be deprived of the benefit which he reasonably expected;

"(b) the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived;

"(c) the extent to which the party failing to perform or to offer to perform will suffer forfeiture;

"(d) the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances;

"(e) the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing."

A seriatim analysis of the circumstances outlined in this section of Restatement (Second) Contracts demonstrates the propriety of the trial court's ruling.

It seems obvious that the intent of the parties was to require that insurance be maintained with respect to the lowboy trailer and extension. Assurance of the performance of that requirement was sought by Stillwell by the requirement that it be named as an additional insured. The record suggests that the nature of Colt's insurance policy was such that naming Stillwell as an additional insured would have resulted in coverage of all of Stillwell's activities not simply the operation of this particular equipment. Because there is no question that the insurance was in force during the period of the lease, Stillwell has not shown that it was deprived of the benefit which it reasonably had expected in any material way.

With respect to the possibility of compensation for the part of the benefit of which Stillwell was deprived, under paragraph 10 of the Lease Agreement, Stillwell had the right to purchase its own insurance and charge Colt for the premiums. Nothing in the record indicates that had that provision of the Lease Agreement been invoked, Stillwell would not have been compensated for that part of the benefit which was not available to it.

The evidence demonstrates that Colt, because of the repudiation of the Lease Agreement by Stillwell, would forfeit the opportunity to purchase the trailer and extension which it had a right to do at the conclusion of the lease. The repudiation by Stillwell resulted in the loss of that portion of the monthly payments which otherwise would have been an investment in the equipment by Colt. The evidence upon which the trial court relied established that the value of the investment was $24,200.00, and it would have been lost completely to Colt if the breach were considered material.

The evidence does not suggest that Colt would have cured the default because the testimony was that Colt's insurance agent had advised it not to name Stillwell as an additional insured on its policy. That circumstance cannot be considered significant in this instance, however, because of the power in Stillwell, discussed above, to cure the default and charge the expense to Colt. So far as the good faith and fair dealing circumstance is concerned, the record does disclose that Colt had informed Stillwell of the advice that it not include Stillwell as an additional insured on its policy. It also advised Stillwell of the existence of the required insurance, and it had considered the matter to be resolved. Stillwell accepted payments on the lease and treated it as in effect after that advice had been furnished and even accepted payments on the lease for some nine months after it had repossessed the equipment.

The implied finding by the trial court that there had been no material breach of the Lease Agreement by Colt, in light of the foregoing discussion, is both manifestly fair and legally correct. There was no error in the trial court's conclusion that no material breach of this contract had occurred.

We turn then to the claims of Stillwell that damages were improperly awarded. Stillwell urges that the damages must be assessed in accordance with § 34–21–292(a), W.S.1977, because the Lease Agreement together with the Option are a contract for sale pursuant to § 34–21–206(a), W.S.1977. Colt protests the invocation of the provisions of the Uniform Commercial Code as adopted in Wyoming on the ground that this was not suggested to the trial court as a basis for its decision. Colt also has reminded this court that a judgment may be sustained upon any lawful basis. *Valentine v. Ormsbee Exploration Corporation*, Wyo., 665 P.2d 452 (1983), and cases cited therein. We conclude that it is appropriate to address the question of damages in accordance with the provisions of the Uniform Commercial Code, although not necessarily the one relied on by Stillwell.

We agree that the Lease Agreement coupled with the Option to purchase appropriately can be treated as a contract for sale in accordance with § 34–21–206(a), W.S.1977. The Uniform Commercial Code, as adopted in Wyoming, makes the passage of title immaterial with respect to rights, obligations and remedies of the seller and the buyer, with certain exceptions which we deem not applicable here. Section 34–21–246, W.S.1977. We have held in substance that with respect to motor vehicles, which the lowboy trailer and its extension are considered to be, the requirements of title are controlled by the provisions relating to the motor vehicle titles. *Cherry Creek Dodge v. Carter*, Wyo., 733 P.2d 1024 (1987).

We recognized a diversity of views with respect to whether a lease agreement such as this, coupled with an option to purchase at the end of the lease, is subject to the Uniform Commercial Code provisions. We begin with § 34–21–202, W.S.1977, which provides:

"Unless the context otherwise requires, this article applies to transactions in goods; * * *."

Some courts have expanded that language to transactions other than sales. E.g., *Hertz Commercial Leasing Corporation v. Transportation Credit Clearing House*, 59 Misc.2d 226, 298 N.Y.S.2d 392 (1969), *reversed on other grounds* 64 Misc.2d 910, 316 N.Y.S.2d 585 (1970); *Sawyer v. Pioneer Leasing Corporation*, 244 Ark. 943, 428 S.W.2d 46 (1968). Other courts have concluded that it can only connote sales. E.g., *O J & C Company v. General Hospital Leasing, Inc.*, Tex.Civ.App., 578 S.W.2d 877 (1979); *Walter E. Heller & Company v. Convalescent Home of The First Church of Deliverance*, 49 Ill.App.3d 213, 8 Ill.Dec. 823, 365 N.E.2d 1285 (1977); *Glenn Dick Equipment Company v. Galey Construction, Inc.*, 97 Idaho 216, 541 P.2d 1184 (1975); *Redfern Meats, Inc. v. Hertz Corporation*, 134 Ga.App. 381, 215 S.E.2d 10 (1975). In our judgment, in this instance, it was sound for the district court to invoke the Uniform Commercial Code as enacted in Wyoming in assessing damages. This is an instance in which it is appropriate to treat the contract, even though denominated a lease, as a sale, at least for these purposes. *Beneficial Commercial Corporation v. Cottrell*, Mont., 688 P.2d 1254 (1984); *Transcontinental Refrigeration Company v. Figgins*, 179 Mont. 12, 585 P.2d 1301 (1978); *Mid-Continent Refrigerator Company v. Way*, 263 S.C. 101, 208 S.E.2d 31 (1974). There are some instances in which the courts have applied specific provisions of Art. 2 of the Uniform Commercial Code even though the transaction was not identified as a sale, although the approach is strictly limited by at least one court. *Glenn Dick Equipment Company v. Galey Construction, Inc.*, supra; *Walter E. Heller & Company v. Convalescent Home of The First Church of Deliverance*, supra.

In this instance, we look to the intent of the parties as manifested in the agreement. See *McGee Steel Company v. State for Use and Benefit of McDonald Industries Alaska, Inc.*, Alaska, 723 P.2d 611 (1986); *Lease Finance, Inc. v. Burger*, 40 Colo. App. 107, 575 P.2d 857 (1977). Testimony on behalf of Colt established that it continued to make the lease payments after the repossession of the trailer and the extension because it wanted to preserve its right to purchase. Under the terms of the Lease Agreement and the Option, Stillwell was obligated to sell for $3,000.00 at the end of the lease term even though there was no concomitant requirement of Colt to buy. The thrust of the agreement was that the election was preserved to Colt until the end of the lease. In relative terms, the purchase price at the end of the lease was less than 10% of the value of the equipment leased. The trial court was justified in considering the contract to be one for the sale of goods at least for the purpose of applying the damage provisions of the Uniform Commercial Code.

Stillwell then argues in its brief that the applicable provision of the Uniform Commercial Code for the measure of damages is § 34–21–292(a), W.S.1977, which provides in pertinent part:

"Subject to the provisions of this article with respect to proof of market price

(2–723 [§ 34–21–299.3]), the measure of damages for nondelivery or repudiation by the seller is the difference between the market price at the time when the buyer learned of the breach and the contract price * * *."

In our view, the damage rules with respect to an aggrieved buyer begin in § 34–21–290, W.S.1977, which provides in pertinent part as follows:

"(a) Where the seller fails to make delivery or repudiates or the buyer rightfully rejects or justifiably revokes acceptance then with respect to any goods involved, and with respect to the whole if the breach goes to the whole contract (section 2–612 [§ 34–21–275]), *the buyer* may cancel and whether or not he has done so *may in addition to recovering so much of the price as has been paid:*

\* \* \* \* \* \*

"(ii) Recover damages for nondelivery as provided in this article (section 2–713 [§ 34–21–292])." (Emphasis added.)

The statutory language is clear that when a seller has repudiated, which Stillwell did in this instance by repossessing the lowboy trailer and extension, the buyer may recover so much of the price as has been paid and, in addition, may recover as damages "the difference between the market price at the time when the buyer learned of the breach and the contract price together with any incidental and consequential damages provided in this article (section 2–715 [§ 34–21–294]) * * *." We understand that the trial court in this instance awarded to Colt the price that already had been paid, and Colt certainly was not limited to recovery of only the loss of profit essentially described in § 34–21–292(a), W.S.1977.

■ While Stillwell's challenge to the sufficiency of the evidence of damages attaches to its theory that there was no evidence of the difference between market price as of the time of repudiation and the contract price, we think it is appropriate to explain the justification for the trial court's award within the context of the Uniform Commercial Code. A witness on behalf of Colt testified that a certain portion of each monthly payment would be attributed to the acquisition of the lowboy trailer and extension when the option was exercised. In effect, that witness advised the court that something more than $1,200.00 of each monthly payment was attributable to a payment for the lowboy trailer and extension. In arguing its case in writing, Colt contended that this evidence established that it already had paid approximately $24,200.00 toward the purchase price. The evidence also is clear that it had paid $13,259.97 for lease payments subsequent to the repossession. The trial court awarded $37,459.97 to Colt on its counterclaim. In the context of the provisions of the Uniform Commercial Code that it could recover its payments already made toward the purchase price and the fact that it clearly was entitled to recover those payments made subsequent to the repossession, we must conclude that the evidence does support the award of damages made by the trial court.

The trial court correctly ruled that the failure to name Stillwell as an additional insured on Colt's insurance policy was not a material breach of the contract. Under those circumstances, the repossession of the equipment by Stillwell constituted a repudiation of the contract which appropriately can be treated as one for the sale of goods under the Uniform Commercial Code. The damages awarded to Colt were consistent with the damage provisions found in §§ 34–21–290(a) and 34–21–294, W.S.1977, and the general law of damages.

The judgment of the trial court is affirmed.