**William L. COMBS, Appellant (Plaintiff),**

v.

**Joan E. SHERRY–COMBS, Appellee (Defendant).**

No. 93–78.

Supreme Court of Wyoming.

Dec. 7, 1993.

**52**

William L. Combs, pro se.

Julie Nye Tiedeken, Cheyenne, for appellee.

Rocklon Edmonds, Cheyenne, for Guardian Ad Litem.

Before MACY, C.J., and THOMAS, CARDINE, GOLDEN and TAYLOR, JJ.

TAYLOR, Justice.

In this appeal from a divorce and custody proceeding, the former husband seeks to reverse the decision of the district court granting custody of a minor child to the former wife. The former husband contends that the custody provisions of a marital agreement were impermissibly disregarded.

We affirm.

## I. ISSUES

Appellant, the former husband, states two issues:

ISSUE I: Whether the lower court abused its discretion in interfering with and ignoring the marital agreement of the parties[.]

 * * * * * *

ISSUE II: Whether the lower court abused its discretion by failing to properly protect the best interests of the child[.]

## II. FACTS

On August 22, 1982, William L. Combs (Combs) and Joan E. Sherry–Combs (Sherry) signed a document styled as "THREE–YEAR RENEWABLE MARRIAGE CONTRACT BETWEEN William Lawrence Combs and Joan Elizabeth Sherry" (hereinafter marriage document). The marriage document set forth various provisions "to satisfy the American legal establishment," including:

1.) The provisions detailed herein shall constitute a legal contract amounting to a marriage partnership.

2.) This contract shall automatically renew itself annually.

3.) On the third anniversary of the couple's wedding date, and thereafter each anniversary which is a multiple of three, renewal of this contract shall require the signatures of both partners; failure of either or both to sign on said dates shall constitute term[ ]ination of this contract, and the couple agrees to abide by the termination details contained herein.

4.) Termination of this contract shall constitute legal divorce, and no further legal procedures (save the standard public announcement) shall be conducted to arrange for dissolving this partnership.

 * * * * * *

7.) The couple agrees to maintain separate banking accounts, properties, and other assets they shall deem fitting, apart from this partnership; any such assets purchased and/or majorly [sic] owned in their separate names shall remain individual assets not subject to division should this contract be terminated (thereby constituting divorce and dissolution of this marriage partnership).

 * * * * * *

9.) Any progeny resulting from the union of this couple shall bear the surname of the father—"Combs".

10.) Any progeny resulting from this union, should this contract be terminated, shall remain in the custody of the parent of that progeny's sex. Child support payments from the other-sex partner shall continue until that issue reaches the age of eighteen, or the custodial parent remarries, whichever occurs first. Such support payments shall not exceed 10% of the non-custodial parent's annual income, and shall be paid bi-annually from the date of contract termination. The non-custodial parent shall furthermore reserve the right of visitation to that issue one hundred eighty (180) days of the fiscal year on a schedule agreed

upon by both parents (and literate child) in the first month of each fiscal year.

On July 4, 1982, Combs and Sherry were legally married, in Massachusetts, prior to the signing of the marriage document. This legal marriage continued despite the couple's failure to renew the marriage document on the third anniversary of their marriage. During this period, Combs, who was a teacher at the time he drafted the marriage document, attended and graduated from law school and the couple moved to Wyoming. The couple had one child during the marriage, William Lawrence Combs II (William).

Combs filed a complaint seeking dissolution of the marriage and custody of William on August 9, 1990. In his complaint, Combs alleged that a "Pre Nuptial Agreement" had been executed which might resolve some of the issues of the divorce. Sherry answered and counterclaimed seeking dissolution of the marriage and custody of William. Each party sought alimony from the other.

The proceedings extended over three years. A divorce was granted by interlocutory decree on April 21, 1992; however, the dispute over custody continued. During this period, an independent evaluation, conducted at the request of the guardian ad litem appointed for William, recommended that custody be granted to Sherry. Following an extended trial, the district court found that, in the best interests of the child, custody should be granted to Sherry. Combs was granted visitation rights. The district court also found that Combs should pay child support and alimony.

The district court filed its opinion letter on April 30, 1992. However, the parties could not agree on a final order. When one order was filed on August 27, 1992, it was immediately challenged by Combs. Numerous motions were filed, including a motion for a new trial. Finally, on December 8, 1992, a consolidated hearing was scheduled to hear all outstanding motions. During that hearing, the district judge ruled the marriage document had terminated prior to the divorce. Following that hearing, an amended order was filed reaffirming the grant of custody in favor of Sherry. This appeal followed.

## III. DISCUSSION

Combs contends the district court abused its discretion by not effectuating the intent of the parties as stated in the marriage document. *See Roberts v. Roberts*, 816 P.2d 1293, 1297 (Wyo.1991) (stating standard of review for abuse of discretion). Despite the termination provisions of the agreement, Combs asserts that a provision providing for a dissolution of the "marriage partnership" remained binding. We hold the district court did not abuse its discretion, because certain provisions of the marriage document are contrary to public policy. Further, we hold the remaining terms of the marriage document are unenforceable due to a lack of consideration.

Combs inaccurately avers that the marriage document is an antenuptial, or prenuptial, agreement. We disagree. The marriage document was signed by Combs and Sherry more than a month after they were legally married.

In Wyoming, antenuptial agreements are valid and enforceable. *Lund v. Lund*, 849 P.2d 731, 739 (Wyo.1993); *Laird v. Laird*, 597 P.2d 463, 468 (Wyo.1979). As we explained in *Lund*, an antenuptial agreement is an executory contract: "An antenuptial agreement is a *contract entered into between two people in contemplation and consideration of marriage.* The marriage provides the requisite consideration to bind both parties. The primary purpose of such agreements is to define and fix the respective property rights of the spouses before the marriage." *Lund*, 849 P.2d at 739 (emphasis added).

An agreement entered into after the parties are married is a postnuptial agreement. 3 Alexander Lindey & Louis I. Parley, *Lindey On Separation Agreements And Antenuptial Contracts*, § 90.01 at 90–28 (1991). A postnuptial agreement is created when the parties execute an agreement following the marriage ceremony, even if the agreement is negotiated and drafted prior to the marriage. *Tompkins v. Bishop*, 94 Cal. App.2d 546, 211 P.2d 14, 16 (1949). The marriage document must be characterized as

a postnuptial agreement; however, it is not an enforceable separation agreement.

A postnuptial agreement must be distinguished from a separation agreement. A separation agreement, entered into by parties in anticipation of immediate separation or after separation, is favored in the law. *Clauss v. Clauss,* 459 P.2d 369, 375 (Wyo. 1969); *Beard v. Beard,* 368 P.2d 953, 955 (Wyo.1962); Restatement (Second) of Contracts § 190 (1981). However, common law continues to hold that unreasonable agreements encouraging divorce or contemplating separation in the future are void as against public policy. Restatement (Second) of Contracts, *supra,* § 190; Samuel Green & John V. Long, *Marriage and Family Law Agreements,* § 4.01 (1984).

As a postnuptial agreement, the marriage document attempts to provide for divorce by simple termination of the contract. While our law recognizes marriage as a civil contract, Wyo.Stat. § 20–1–101 (1987), dissolution of a marriage requires a decree of divorce by a district court with appropriate jurisdiction. Wyo.Stat. § 20–2–104 (1987). In attempting to restrict the jurisdiction of the court, the marriage document impermissibly attempts to contravene governing statutory law. *Tri–County Elec. Ass'n, Inc. v. City of Gillette,* 584 P.2d 995, 1004 (Wyo. 1978). This provision is void as against public policy.

Similarly, the marriage document attempts to restrict the court's custody determination by requiring that any child of the marriage be placed in the custody of the same sex parent. Wyoming law prohibits a custody determination based solely on the gender of the parent. Wyo.Stat. § 20–2–113(a) (1987 & Cum.Supp.1993). Therefore, the provision of the marriage document calling for custody to be granted to the same sex parent is void as against public policy. Restatement (Second) of Contracts § 191 (1981). *See also Alves v. Alves,* 262 A.2d 111, 117 (D.C.App.1970) (holding separation agreement did not preclude court's later determination of custody) and *McManus v. Howard,* 569 So.2d 1213, 1215–16 (Miss.1990) (holding separation agreement with custody

provision is void and contrary to public policy since it attempts to restrict the court's jurisdiction).

The marriage document also impermissibly attempts to limit the court's authority to set support payments to ten percent of the non-custodial parent's annual income. *Grosz v. Grosz,* 506 P.2d 46, 48 (Wyo.1973) (holding the court must disregard settlement agreements which fail to provide proper support). While Wyoming permits the parties to submit child support agreements to the court, our legislature requires court approval or rejection of any plan. Wyo.Stat. § 20–6–302(c) (Cum.Supp.1993). It is settled law that a parent is prohibited from contracting away the rights of the child to seek adequate support.

> "Contracts between husband and wife, if fairly made, are generally considered binding as to them, although legally ineffective to oust the jurisdiction of the court in a support action.... A mother cannot, by contract, bargain away the right of her minor child to adequate support from the father, regardless of the validity of the agreement as between the parents themselves.... In each case it is for the court to determine whether or not the terms of the agreement are reasonable, made without fraud or coercion, and have been carried out in good faith."

*Miesen v. Frank,* 361 Pa.Super. 204, 522 A.2d 85, 87 (1987) (*quoting Com. ex rel. Bortz v. Norris,* 184 Pa.Super. 594, 135 A.2d 771, 773 (1957)). The presumptive support obligation for a single child at the relevant income levels of both parents far exceeds the ten percent maximum stated in the marriage document. Wyo.Stat. § 20–6–304(a) (Cum. Supp.1993). The provision of the marriage document limiting potential support payments is void as against public policy.

The remaining provisions of the marriage document are unenforceable due to the failure to provide consideration. In an antenuptial agreement, the marriage provides the consideration to bind both parties. *Lund,* 849 P.2d at 739. In a postnuptial agreement, the existing marital relationship cannot provide adequate consideration; therefore, there must be an exchange of oth-

er identifiable consideration. 3 Lindey & Parley, *supra*, § 91.04(E) at 91–20. There is no identifiable consideration in the form of an act, forbearance or a legal relation in the creation of the marriage document. *Prudential Preferred Properties v. J and J Ventures, Inc.*, 859 P.2d 1267, 1272 (Wyo.1993).

Next, we turn to Combs' general contention that the district court abused its discretion in failing to protect the best interests of William. Combs argues that the district court erred in its custody, alimony and property distribution findings. He also maintains that various procedural errors occurred in granting continuances prior to trial and in post-trial proceedings.

 The arguments Combs presents regarding custody, alimony and property distribution seek to reverse findings of fact made at trial. However, Combs did not designate that a transcript of the trial be included in the record on appeal. W.R.A.P. 3.05(b). Therefore, he has failed in his burden to bring a sufficient record to this court upon which a decision can be based. *Osborn v. Pine Mountain Ranch*, 766 P.2d 1165, 1167 (Wyo.1989); *Scherling v. Kilgore*, 599 P.2d 1352, 1357 (Wyo.1979). Even if a transcript were available, our review discloses that Combs misunderstands the nature of an abuse of discretion. Abuse of discretion occurs when a court exceeds the bounds of reason or commits an error of law. *Roberts*, 816 P.2d at 1297 (*quoting Martinez v. State*, 611 P.2d 831, 838 (Wyo.1980)). Abuse of discretion is not found in vague attempts to distinguish financial evidence produced at trial. This court does not act as a fact finder. *Gifford v. Casper Neon Sign Co., Inc.*, 618 P.2d 547, 551 (Wyo.1980). We hold that the district court did not abuse its discretion in

granting custody of William to Sherry; in requiring Combs to pay alimony; or in making an equitable distribution of marital property.

 Combs next contends that the district court abused its discretion in granting continuances prior to trial. He specifically points to continuances requested by the guardian ad litem to obtain an independent custody evaluation. Combs asserts this evaluation could have been performed by a counselor hired by Combs who had conducted a prior evaluation of William. This argument is without merit. In the context of this disputed custody proceeding, "independent" evaluation required a disinterested professional. The district court did not abuse its discretion in granting the continuances necessary to promote justice. *Honan v. Honan*, 809 P.2d 783, 786–87 (Wyo.1991).

Finally, Combs contends various errors occurred in the manner in which post-trial motions were considered. The basis of each argument is the same, that the district court should have reconsidered the evidence and amended the findings of fact. We have carefully considered each of these arguments and find them without merit.

## IV. CONCLUSION

The decision of the district court is affirmed in all respects.