2006 WY 111

**Denise SEHERR–THOSS,**
**Appellant (Plaintiff),**

v.

**Roger SEHERR–THOSS, Appellee**
**(Defendant).**

**Nos. 05–237, 06–10.**

Supreme Court of Wyoming.

Aug. 31, 2006.

Representing Appellant: Kenneth S. Cohen of Cohen Law Office, P.C., Jackson, Wyoming.

Representing Appellee: Bret F. King of King and King, LLC, Jackson, Wyoming.

Before VOIGT, C.J., and GOLDEN, HILL *, KITE, and BURKE, JJ.

HILL, Justice.

[¶ 1] Denise Seherr–Thoss (Wife) appeals an order of the district court enforcing a prenuptial agreement '(the Agreement) and dividing the marital estate. On appeal, Wife challenges the validity of the Agreement and the propriety of the district court's division of certain marital property pursuant to specific provisions of the Agreement. In a separate appeal, Wife challenges the sufficiency of an award of attorneys' fees. We will affirm the district court's property distribution in part and reverse in part and affirm the district court's award of attorneys' fees.

## ISSUES

[¶ 2] In Case No. 05–237, Wife sets forth the following statements of the issues:

### ISSUE NO. 1

The district court erroneously held that the Premarital Agreement is enforceable, in spite of its finding that Appellee breached the Agreement by failing to make any of the annual $10,000 payments to Appellant required under the Agreement.

### ISSUE NO. 2

The district court erred when it ruled that Article III, Paragraph 3 of the Premarital Agreement controlled the distribution of the sale proceeds from the Arizona house (rather than Article I, Paragraph 4), and that Appellant was not entitled to any portion of the sale proceeds.

### ISSUE NO. 3

The district court erred when it ruled that, pursuant to Article I, Paragraph 3 of the [Premarital] Agreement, Appellant was en-

* Chief Justice at time of oral argument.

titled to four annual payments of $10,000 rather than five annual payments, and Appellant is therefore owed an additional $10,000 [for 2004, and a pro rata sum for 2005].

### ISSUE NO. 4

The district court erred when it held that the parties were married at least three years but less than four years, and that pursuant to Article III, Paragraph 4 of the [Premarital] Agreement, Appellant was entitled to a lump sum payment of $40,000. The district court should have held that the parties were married at least four years but less than five years and that Appellant [is] owed a lump sum payment of $50,000.

### ISSUE NO. 5

The district court erred when it held that [Wife] was required to repay [Husband] the sum of $20,000 based on her withdrawal of funds from joint accounts immediately prior to filing for divorce.

Appellee Roger Seherr–Thoss (Husband) responds with statements of the issues that parallel those set out above though framed in support of the district court's ruling.

[¶ 3] In Case No. 06–10, Wife sets out the following:

Did the district court abuse its discretion in awarding to [Wife] less than half of the attorneys['] fees incurred by her in the divorce proceeding under W.S. § 20–2–111, in view of the fact that [Wife] did not have the resources to pay an attorney to litigate the proceeding; and that [Husband] was a wealthy man who throughout this litigation took the position—ultimately rejected by the district court—that [Wife] was not entitled to any further settlement distribution; and that [Husband] had significantly breached the Premarital Agreement he was seeking to hide behind?

Husband responds:

Did the District Court act arbitrarily and capriciously when it awarded [Wife]

$15,000 in attorney's fees pursuant to W.S. § 20–2–111[?]

## FACTS

[¶ 4] The parties were married on October 1, 2000. Prior to the marriage, they entered into a prenuptial agreement. The Agreement set forth the parties' basic intentions:

The parties desire to define their respective property and rights in the event of a dissolution of their marriage, and to limit or release their prospective rights of inheritance from each other.

. . . .

The parties desire by this Agreement to provide that all real and personal property owned by either of them at the time of the marriage and all real and personal property coming to them from any source during the marriage, including inheritance, shall be their respective sole and separate property.

The parties further desire by this Agreement to waive and relinquish any rights heretofore or hereafter accruing to either of them for spousal support from the other in the event of dissolution of their forthcoming marriage.

. . . .

This Agreement is being made, in part, with the express intention of keeping such property, income and earnings or increase from each party's business, investments or occupations the sole and separate property of the party earning or acquiring came to use and dispose of as he or she see fit as if no marriage had been entered into.

The substantive provisions of the Agreement that are relevant to the dispute before us are these:

[Article I, Paragraph 3] *Gifts to Denise During Marriage.* Roger agrees to pay to Denise the sum of $10,000 per year for so long as the parties are married to each other. The parties agree that the first of such payments shall be made no later than December 30, 2000. . . .

[Article I, Paragraph 4] *Transfers Between the Parties.* Notwithstanding the provisions of this Agreement, either party shall have the right to transfer or convey to the other any property or interest therein which may be lawfully conveyed or transferred during his or her lifetime or by will or otherwise upon death, and neither party intends by this Agreement to limit or restrict in any way the right and power to receive any such transfer or conveyance from the other. No such transfer or conveyance shall be deemed an amendment, in whole or in part, or a termination of this Agreement or any portion thereof, nor shall such be construed to limit or adversely affect the purpose and intent of this Agreement establishing the separate property of the parties.

[Article III, Paragraph 3] *Property Acquired by Joint Contributions.* Except as specifically provided in Article II paragraph 4 hereof, each of the parties shall own, as their separate property, an interest in any property acquired by them during the marriage by joint contributions of separate property, notwithstanding the manner in which such property is titled. The interest of each party shall be equal to that percentage which he or she contributed to the acquisition of such property. The provisions of this Article III paragraph 3 may be altered with respect to specific property, but only by a separate written agreement, signed by both parties, and referring to the specific item of property to which such agreement pertains.

[Article III, Paragraph 4] *Lump Sum Settlement.* The parties agree that Roger will pay to Denise the following lump sum amounts in the event of divorce within the first five years of marriage, as a full and final settlement for all property and alimony issues: a) if the parties were married less than 1 year, Roger will pay Denise $10,000; b) if the parties were married at least one year, but less than 2 years, Roger will pay Denise $20,000; c) if the parties were married at least 2 years but less than 3 years, Roger will pay Denise $30,000; d) if the parties were married at least 3 years but less than 4 years, Roger will pay Denise $40,000; and e) if the parties were married at least 4 years but less than 5 years, Roger will pay Denise $50,000.

Such payment shall be made in full within 30 days following the court order finalizing the divorce, except that if the payment owing to Denise is $50,000, Denise agrees Roger may make two equal installments over a period of two years.

[¶ 5] Wife filed for divorce on January 7, 2004. On September 10, 2004, she filed a motion for partial summary judgment contesting the enforceability of the Agreement. Wife argued that Husband had breached the Agreement by failing to make the annual $10,000 payments required under Article I, Paragraph 3. Husband filed a cross-motion for partial summary judgment arguing the continued validity of the Agreement. After an unreported hearing on the competing motions was held on October 19, 2004, the district court issued an order concluding that the Agreement was valid and enforceable and granting Husband's motion.

[¶ 6] On April 18, 2005, a hearing was held on the division of the marital estate under the provisions of the Agreement. The hearing was not recorded and Wife did not obtain a statement of the evidence pursuant to W.R.A.P. 3.03 [1] (LexisNexis 2005).

When this Court does not have a properly authenticated transcript before it, it must accept the trial court's findings of fact upon which it bases any decisions regarding evidentiary issues. *Capshaw v. Schieck*, 2002 WY 54, ¶ 21, 44 P.3d 47, ¶ 21 (Wyo.2002). The failure to provide a transcript does not necessarily require dismissal of an appeal, but our review is restricted to those allegations of error not requiring inspection of the transcript. Lacking a transcript, or a substitute for the transcript, the regularity of the trial court's judgment and the competency of the evidence upon which that judgment is based must be presumed. *Stadtfeld v. Stadtfeld*, 920 P.2d 662, 664 (Wyo.1996); *Combs v.*

*Sherry–Combs*, 865 P.2d 50, 55 (Wyo.1993); and see *Wood v. Wood*, 865 P.2d 616 (Wyo. 1993) (dismissing appeal for lack of record, rather than affirming).

*Harshberger v. Harshberger*, 2005 WY 99, ¶ 3, 117 P.3d 1244, 1246–47 (Wyo.2005) (quoting *Burt v. Burt*, 2002 WY 127, ¶ 7, 53 P.3d 101, 103 (Wyo.2002)). Since we must accept the district court's findings of fact, we set forth the following findings and conclusions from the Decree of Divorce that are pertinent to the issues on appeal:

6. A Premarital Agreement ("the Agreement") was executed on September 28, 2000. The Court finds the Agreement is fair and equitable, the parties entered into the agreement knowingly and willingly, and neither party was acting under fraud or duress at the time of execution and performance. The agreement is valid and binding between the parties and should be fully incorporated in the Decree of Divorce. The Agreement provides in part:

a. *Article I, Paragraph 3:* Defendant agrees to Pay [sic] Plaintiff $10,000 per year for so long as the parties are married to each other. The first of such payment shall be made no later than December 30, 2000. Defendant did not make any of the payments to Plaintiff and breached the Agreement. Defendant gave Plaintiff $10,000 in 2001 to be used as a loan to her daughter. In return, Plaintiff's daughter delivered four cement mixers to the Defendant to be used as collateral until the loan could be repaid. Defendant either has the cement mixers in his custody or has disposed of them. The Court considers the cement mixers as collateral for the loan and will treat the $10,000 payment to Plaintiff as being repaid. Pursuant to the Agreement, Defendant owes Plaintiff

---

1. W.R.A.P. 3.03 provides:
 **3.03 Statement of evidence or proceedings when no report was made or when the transcript is unavailable.**
 If no report of the evidence or proceedings at a hearing or trial was made, or if a transcript is unavailable, appellant may prepare a statement of the evidence or proceedings from the best available means including appellant's recollection. The statement shall be served on appellee, who may serve objections or propose amendments within 15 days after service. The statement and any objections or proposed amendments shall be submitted to the trial court for settlement and approval and as settled and approved shall be included by the clerk of the trial court in the record on appeal.

$10,000 per year for 2000, 2001, 2002 and 2003, totaling $40,000.

b. *Article III, Paragraph 3:* The interest of each party in property is equal to that percentage which he or she contributed to the acquisition of such property. Plaintiff did not contribute to the acquisition of the Arizona house and is not entitled to any of the proceeds from the sale of the home.

c. *Article III, Paragraph 4:* In the event of divorce Defendant shall pay to Plaintiff the sum of $10,000 per year for each year they were married as a full and final settlement for all property and alimony issues. The parties were married three years but less than four years and Defendant will pay Plaintiff $40,000.00. Therefore, Defendant owes Plaintiff $40,000.00.

. . . .

9. On October 31, 2002, Plaintiff withdrew $5,000.00 from Jackson State Bank and placed the money in her personal account. On November 1, 2002, Plaintiff withdrew an additional $10,000.00 and placed it in her personal account. She used the money to rent an apartment in Driggs and to support herself and her son. The Court finds these funds necessary for the temporary support of Plaintiff and her son. Prior to filing for divorce, Plaintiff withdrew additional funds: $25,000 from Jackson State Bank, $5,000.00 from Wells Fargo and $10,000.00 from a credit card, totaling $40,000. This amount should be repaid to the Defendant, giving credit to Plaintiff for the $20,000 she contributed to the purchase of the parties' motor home. Subtracting the amount contributed to the motor home, $20,000.00, from the amount withdrawn, $40,000.00, equals $20,000.00.

In appeal No. 05–237, Wife assigns error to these rulings by the district court.

[¶ 7] Subsequent to the issuance of the Decree of Divorce, Wife filed a motion to recover her attorneys' fees pursuant to Wyo. Stat. Ann. § 20–2–111 [2] (LexisNexis 2005). Wife sought an award of $33,836.08. After a hearing that was not recorded and without making any specific findings, the district court awarded attorneys' fees in the amount of $15,000.00. Wife challenges the sufficiency of that award in appeal No. 06–10.

## STANDARD OF REVIEW

[¶ 8] It should be kept in mind as we review each of the issues raised by Wife under the particular standard of review applicable thereto that, as noted above, the absence of a hearing transcript means that we will presume the regularity of the trial court's decision and the competency of the evidence upon which that judgment is based. *Harshberger,* ¶ 18, 117 P.3d at 1252.

 [¶ 9] The district court determined the validity of the Agreement on motions for summary judgment.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." W.R.C.P. 56(c). A genuine issue of material fact exists when a disputed fact, if proven, would establish or refute an essential element of a cause of action or a defense that a party has asserted. *Metz Beverage Co. v. Wyoming Beverages, Inc.,* 2002 WY 21, ¶ 9, 39 P.3d 1051, [1055] (Wyo.2002).

We evaluate the propriety of a summary judgment by employing the same stan-

2. **§ 20–2–111. Alimony during pendency of action; allowances for prosecution or defense of action; costs.**

In every action brought for divorce, the court may require either party to pay any sum necessary to enable the other to carry on or defend the action and for support and the support of the children of the parties during its pendency. The court may decree costs against either party and award execution for the costs, or it may direct costs to be paid out of any property sequestered, in the power of the court, or in the hands of a receiver. The court may also direct payment to either party for such purpose of any sum due and owing from any person.

We have held that the trial court has broad discretion whether to award attorneys' fees pursuant to this statute. See *Roberts v. Roberts,* 816 P.2d 1293 (Wyo.1991); and *Prentice v. Prentice,* 568 P.2d 883 (Wyo.1977).

dards and by examining the same material as the district court. *Id.* We examine *de novo* the record, in the light most favorable to the party opposing the motion, affording to that party the benefit of all favorable inferences that may be drawn from the record. *Roussalis v. Wyoming Medical Center, Inc.,* 4 P.3d 209, 229 (Wyo. 2000). If upon review of the record, doubt exists about the presence of issues of material fact, that doubt must be resolved against the party seeking summary judgment. *Id.* We accord no deference to the district court's decisions on issues of law. *Metz,* ¶ 9.

*Knapp v. Landex Corp.,* 2006 WY 36, ¶ 7, 130 P.3d 924, 926 (Wyo.2006) (quoting *Linton v. E.C. Cates Agency, Inc.,* 2005 WY 63, ¶¶ 6–7, 113 P.3d 26, 28 (Wyo.2005)).

[¶ 10] A district court's disposition of marital property is reviewed for an abuse of discretion. In making that determination, we ask whether or not the district court reasonably could have concluded as it did. Ordinarily, we consider only the evidence of the successful party and grant to that party every favorable inference that can be drawn from the record. *Montoya v. Navarette–Montoya,* 2005 WY 161, ¶ 3, 125 P.3d 267, 267–68 (Wyo.2005) (quoting *Welch v. Welch,* 2003 WY 168, ¶ 4, 81 P.3d 937, 938 (Wyo.2003)).

[¶ 11] Prenuptial or antenuptial agreements are valid and enforceable in Wyoming and are governed by the same rules of construction that are applicable to other contracts. *Lund v. Lund,* 849 P.2d 731, 739 (Wyo.1993).

In contract litigation, when the terms of the agreement are unambiguous, the interpretation is a question of law.... *Examination Management Services, Inc. v. Kirschbaum,* 927 P.2d 686, 689 (Wyo.1996); *Union Pacific Resources Co. v. Texaco, Inc.,* 882 P.2d 212, 218–19 (Wyo.1994). Whether a contract is ambiguous is a question of law for the reviewing court. *Prudential Preferred Properties v. J and J Ventures, Inc.,* 859 P.2d 1267, 1271 (Wyo. 1993). We review questions of law de novo without affording deference to the decision of the district court. *Hermreck v. United*

*Parcel Service, Inc.,* 938 P.2d 863, 866 (Wyo.1997); *Griess v. Office of the Atty. Gen., Div. of Criminal Investigation,* 932 P.2d 734, 736 (Wyo.1997).

According to our established standards for interpretation of contracts, the words used in the contract are afforded the plain meaning that a reasonable person would give them. *Doctors' Co. v. Insurance Corp. of America,* 864 P.2d 1018, 1023 (Wyo.1993). When the provisions in the contract are clear and unambiguous, the court looks only to the "four corners" of the document in arriving at the intent of the parties. *Union Pacific Resources Co.,* 882 P.2d at 220; *Prudential Preferred Properties,* 859 P.2d at 1271. In the absence of any ambiguity, the contract will be enforced according to its terms because no construction is appropriate. *Sinclair Oil Corp. v. Republic Ins. Co.,* 929 P.2d 535, 539 (Wyo.1996); *Prudential Preferred Properties,* 859 P.2d at 1271.

*Mueller v. Zimmer,* 2005 WY 156, ¶ 35, 124 P.3d 340, 359 (Wyo.2005) (quoting *Roney v. B.B.C. Corporation,* 2004 WY 113, ¶ 10, 98 P.3d 196, 200 (Wyo.2004); *Amoco Prod. Co. v. EM Nominee Partnership Co.,* 2 P.3d 534, 540 (Wyo.2000); and *Double Eagle Petroleum & Min. Corp. v. Questar Exploration & Prod. Co.,* 2003 WY 139, ¶ 7, 78 P.3d 679, 681 (Wyo.2003)).

[¶ 12] Finally, the decision to award attorneys' fees under Wyo. Stat. Ann. § 20–2–211 rests within the sound discretion of the district court. *Russell v. Russell,* 948 P.2d 1351, 1355–56 (Wyo.1997); *Rocha v. Rocha,* 925 P.2d 231, 234 (Wyo.1996). The party seeking to recover attorneys' fees bears the burden of establishing the reasonableness of the fees requested. *Id.*

## DISCUSSION

[¶ 13] In her first assignment of error, Wife contends that the district court erred in finding the Agreement valid and enforceable. Wife notes that Husband failed to make any of the $10,000 annual payments during the course of the marriage as required under Article I, Paragraph 3, of the Agreement. Wife characterizes that failure

as a substantial and material breach of the parties' contract and, citing Restatement (Second) of Contracts § 237 (1981),[3] argues that as a consequence she is no longer bound by the Agreement.

■ [¶ 14] In order to warrant termination or repudiation of a contract, a breach must be substantial and material. *Stillwell Welding Co. v. Colt Trucking*, 741 P.2d 598, 600 (Wyo.1987). To determine whether a breach was substantial and material, we have cited with approval Restatement (Second) Contracts § 241 (1981):

In determining whether a failure to render or to offer performance is material, the following circumstances are significant:

(a) the extent to which the injured party will be deprived of the benefit which he reasonably expected;

(b) the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived;

(c) the extent to which the party failing to perform or to offer to perform will suffer forfeiture;

(d) the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances;

(e) the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing.

*Stillwell Welding Co.*, 741 P.2d at 600–01; see also *Browning v. State*, 2001 WY 93, ¶ 32, 32 P.3d 1061, 1071 (Wyo.2001).

[¶ 15] Wife's argument presumes, without discussion or analysis, that Husband's breach of the Agreement is substantial and material. As the commentary to § 237 of the Restatement (Second) of Contracts, which was relied upon by Wife, makes clear:

In determining whether a failure of performance is material, the circumstances listed in § 241 should be considered.

Restatement (Second) of Contracts § 237, comment b. Failure to cite pertinent authority has long been a basis for summary affirmance of cases or issues by this Court. *Kelley v. Watson*, 2003 WY 127, ¶ 4, 77 P.3d 691, 692 (Wyo.2003); *Hamburg v. Heilbrun*, 891 P.2d 85, 87 (Wyo.1995). We decline to consider Wife's arguments given her failure to fully evaluate the issue within the context of the applicable law.[4]

■ [¶ 16] Wife contends that the district court made four errors in applying the terms of the Agreement. Initially, she contends the court erred when it awarded Husband the entirety of the proceeds from the sale of a house in Arizona. The parties agree that the house was acquired during the course of the marriage and that it was purchased entirely with Husband's funds with title resting in a trust of Husband's. Later, however, Husband signed a warranty deed conveying title from the trust to "ROGER W. SEHERR–THOSS and JOY DENISE SEHERR–THOSS, husband and wife, as their community property with the rights of survivorship[.]" Citing Article III, Paragraph 3, of the Agreement, the district court concluded that since Wife did not contribute to the acquisition of the house, she was not entitled to any of the proceeds from the sale. Wife challenges that ruling arguing that Husband deeded her half of the property as a gift and that distribution of the proceeds from its sale should have been pursuant to Article I, Paragraph 4, of the Agreement.

[¶ 17] We have said that when title to real estate is taken in the names of both

**3.** Restatement (Second) of Contracts § 237 provides:

Except as stated in § 240, it is a condition of each party's remaining duties to render performances to be exchanged under an exchange of promises that there be no uncured material failure by the other party to render any such performance due at an earlier time.
We have not yet had occasion to consider the applicability of Section 237 in Wyoming and for

our resolution of this case, it is not necessary to do so today.

**4.** We note that enforcement of the Agreement results in Wife fully receiving the benefit for which she bargained and expected to receive under the contract while the intent of the parties in executing the Agreement—defining and protecting each party's respective rights and property in the event of dissolution of the marriage—is given effect.

spouses but only one spouse paid for it, a rebuttable presumption that a fifty percent interest intended as a gift to the non-paying spouse arises. *DeJohn v. DeJohn,* 2005 WY 140, ¶ 18, 121 P.3d 802, 809 (Wyo.2005) (quoting *Barton v. Barton,* 996 P.2d 1, 4 (Wyo. 2000)); see also *Tyler v. Tyler,* 624 P.2d 784, 785–86 (Wyo.1981). The inquiry into whether or not the presumption of a gift has been rebutted is, by necessity, a factual one dependent upon the particular circumstances surrounding the conveyance. *DeJohn,* ¶ 18, 121 P.3d at 809 (concluding that district court's determination that husband's testimony had provided sufficient evidence to rebut presumption not an abuse of discretion); see also *Ewing v. Hladky Construction, Inc.,* 2002 WY 95, ¶¶ 11–13, 48 P.3d 1086, 1088–89 (Wyo.2002) (whether a conveyance was a gift was a factual determination by the trial court). Wife's contention that Article I, Paragraph 4, governed disposition of the proceeds from the sale of the Arizona house is predicated on her presumption that she was gifted a half-interest in it. The implication of the district court's ruling, however, is that it did not believe that Husband intended the warranty deed to convey a gift and that the presumption had been overcome. The lack of specific findings by the court on the issue is regrettable but there is no indication in the record that any request pursuant to W.R.C.P. 52(a) (LexisNexis 2006) was made. See *In re MS,* 9 P.3d 984, 986 (Wyo.2000) ("A trial court relying on discretionary power is not required to place on record the circumstances and factors that were crucial to its determination unless one of the parties requests it under W.R.C.P. 52(a)."). Our review is also constrained by the deficient record in this case. We must presume that the court's decision is supported by competent evidence. In the absence of any basis upon which to review the factual determination that the presumption of a gift was rebutted, we cannot conclude that there was an abuse of discretion by the district court in its disposition of the proceeds from the sale of the Arizona residence.

[¶ 18] Pursuant to Article I, Paragraph 3, of the Agreement, Husband was required to pay Wife "$10,000 per year for so long as the parties" were married to each other with the first payment being "made no later than December 30, 2000." The district court found that Husband had failed to make any of the payments and ordered him to pay Wife $10,000 each for the years 2000, 2001, 2002, and 2003, for a total of $40,000. Wife contends that the district court misapplied the Agreement. She notes that the Agreement provides that the payment obligation continued "for so long as the parties are married." Since the divorce did not become effective until August 12, 2005, Wife contends that she was entitled to payments for the years 2000, 2001, 2002, 2003, and 2004, along with a pro rata share for the partial year of 2005. She argues that Husband admitted in his Proposed Findings of Fact and Conclusions of Law submitted to the district court that she was entitled to payments for the years 2000 through 2004. Including the pro rata amount for 2005, she concludes that the district court should have ordered Husband to pay her $55,833.

[¶ 19] We agree with Wife to the extent that pursuant to the plain and unambiguous terms of Article I, Paragraph 3, of the Agreement, Husband was obligated to pay $10,000 each year the parties were married. Although the divorce proceedings had commenced during 2004, the parties remained legally married during that time.[5] *Combs v. Sherry–Combs,* 865 P.2d 50, 54 (Wyo.1993) (dissolution of marriage requires a decree of divorce by a district court with appropriate jurisdiction). Accordingly, Wife is correct when she asserts that Husband owed her $50,000 ($10,000 per year for the years 2000 through 2004) under the Agreement. Wife also correctly notes that Husband admitted in his Proposed Findings of

---

**5.** While the parties could not have provided for termination of their marriage in their prenuptial agreement they could have, of course, counted only the time of marriage prior to the filing of divorce for purposes of establishing Husband's financial obligations. They did not do that, however, and instead simply used the generic term of marriage. Accordingly, we apply the ordinary meaning of that term, which is legally defined as the period from date of marriage to divorce. *Combs,* 865 P.2d at 54.

Fact and Conclusions of Law that he owed payments for that period:

> Pursuant to Article I, Paragraph 3 of the Premarital Agreement, [Wife] was to receive annual payments of $10,000 per year starting in 2000. Thus, [Wife] was entitled to a $10,000 payment in 2000, 2001, 2002, 2003 and 2004. *The parties agree that the payment was made in 2001.* [Emphasis added.]

Wife neglects to mention the highlighted sentence in her main or reply briefs. At this point, our ability to review this issue is effectively curtailed by the state of the record. Without a transcript of the evidentiary hearing, it is impossible for us to determine the actual facts. We must presume that the facts support the district court's ultimate ruling.

■ [¶ 20] Finally, we do not agree with Wife that she is entitled to a pro rata share for the year 2005. The Agreement obligates Husband to make payments "per year" so long as the parties are married. The ordinary meaning to the term "year" is a twelve-month calendar period. See Webster's II New College Dictionary 1309 (3rd ed.2005). If the parties had intended for pro rata payments, they could have so specified in the Agreement. They did not. Accordingly, Husband's obligation does not encompass the partial year of marriage. Therefore, the district court's order that Husband's obligation to Wife under this provision of the Agreement is $40,000 is affirmed.

[¶ 21] Wife contends that the district court erred when it awarded her $40,000 pursuant to Article III, Paragraph 4, of the Agreement. That provision obligates Husband to make a lump sum payment of varying amounts to Wife depending on the length of the marriage "in the event of divorce within the first five years of marriage." The district court found that "the parties were married three years but less than four years" obligating Husband to pay $40,000 under the terms of the provision. Wife insists that the parties were married for four years but less than five, entitling her to $50,000 payable in "two equal installments over a period of two years."

■ [¶ 22] The language of Article III, Paragraph 4, is unambiguous. It provides that if the parties were to divorce within the first five years of marriage Wife was entitled to a lump sum payment from Husband. The amount of Husband's obligation increases in increments of $10,000 for each year of marriage up to a maximum of $50,000 if the parties have been married at least four but less than five years. As previously noted, the parties were married on October 1, 2000, and divorced on August 12, 2005. By the plain terms of the Agreement, Husband owes Wife $50,000. In his Proposed Findings of Fact and Conclusions of Law, Husband agreed with this conclusion:

> In addition, pursuant to Article III, Paragraph 4 of the Premarital Agreement, [Wife] is entitled to a lump sum payment from [Husband] upon divorce, that sum to be dependent on the length of the marriage with a maximum payment of $50,000. [Wife] is entitled to a lump sum payment of $50,000, payable in $25,000 increments over a two year period.

On appeal, Husband contends that the district court's conclusion that the parties "were married three years but less than four years" and that Husband was obligated to pay $40,000 should be affirmed because "hypothetically" there might have been evidence regarding the parties' intent on how to determine the length of marriage under the Agreement during the unrecorded evidentiary hearing. Husband's argument is not persuasive. The determination of whether or not a contract is ambiguous is a question of law that we have already answered. When a contract is unambiguous, it will be enforced according to its terms. In this case, the facts determinative in application of the Agreement provision—the dates of marriage and divorce—are part of the record before us. Applying the unambiguous terms of the provision then, we must conclude that the district court erred when it awarded Wife $40,000; the parties were married for at least four and less than five years and, accordingly, Wife should have been awarded $50,000.

■ [¶ 23] In her final allegation of error in Case No. 05–237, Wife contends that

the district court erred in concluding that she had improperly removed $40,000 [6] from joint bank accounts after the divorce action had been filed. Wife insists that since these were joint accounts, she had the right to withdraw the money. She also argues that by adding her name to the accounts, Husband intended a gift.

[¶ 24] The disposition of marital property, including funds in joint accounts, is within the district court's discretion and a just and equitable distribution is as likely as not to be unequal. *Dunham v. Dunham*, 2006 WY 1, ¶¶ 6–9, 125 P.3d 1015, 1016–18 (Wyo.2006); *Hoffman v. Hoffman*, 2004 WY 68, ¶ 12, 91 P.3d 922, 925–26 (Wyo.2004). In this case, the Agreement provided that each party was entitled to their separate property. It is obviously a fact-intensive inquiry to determine the extent to which the funds in the parties' joint accounts were joint property or the personal property of Husband or Wife. Merely because the funds were in a joint account is not determinative of that inquiry. To the extent that Wife's argument is predicated on a claim of a gift, that too is a factual inquiry as we have already discussed. We cannot review this claim because the lack of a transcript of the evidentiary hearing means that we must presume that the evidence supports the district court's decision. For that reason, we cannot find an abuse of discretion by the district court in its disposition of the funds in the parties' joint accounts.

6. The court offset this amount by crediting Wife with $20,000 she had contributed towards a motor home and reducing the amount Husband owed under Article I, Paragraph 3, of the Agreement by the remainder.

7. **3.01. Composition of record.**
 (a) The record shall consist of:
 (1) The original papers and exhibits filed in the trial court.
 (2) The transcript of proceedings or any designated portion (if the proceedings were not stenographically recorded or transcribed in accordance with these rules, the electronic audio recording of the proceedings, or any designated portion); and
 (3) A certified copy of the docket entries prepared by the clerk of the trial court.
 (b) The transmitted record shall consist of all portions of the record designated by the parties to the appeal for transmission to the appellate court, as described in Rule 3.05(b), (c) and (d).

[¶ 25] In Case No. 06–10, Wife challenges the district court's ruling on her motion for attorneys' fees. After the entry of the divorce decree, Wife filed a motion in the district court seeking attorneys' fees pursuant to Wyo. Stat. Ann. § 20–2–111. Wife sought an award of $33,836.08. A hearing was held on the motion and on October 14, 2005, the district court issued an order awarding Wife attorneys' fees of $15,000.00 as reasonable and necessary. Wife appeals that order arguing that she provided factual documentation in support of her full claim. Husband responds by arguing that we cannot effectively review the district court's decision given the lack of a transcript of the hearing. Wife counters in her reply brief that the hearing has been transcribed and is part of the record in this appeal.

[¶ 26] Wife's representation regarding the state of the record before this Court is not accurate: There is no transcript of the hearing on her motion for attorneys' fees in the record. Wife supported her representation by citing to the district court's Docket Index. There is a difference, however, between the Docket Index, which identifies all documents made part of the record during the lower court proceedings and the record transmitted to this Court in an appeal. Compare W.R.A.P. 3.01(a) and (b).[7] The latter consists only of those parts of the district court record designated by the parties. See W.R.A.P. 3.05(b)-(d).[8] Wife's Des-

8. **3.05. Designation, transmission and retention of record.**

 . . . .
 (b) Appellant shall, contemporaneously with the filing of its brief in the appellate court and service of that brief upon appellee, serve on appellee, file with the clerk of the trial court a designation for transmission to the appellate court of all parts of the record, without unnecessary duplication, to which appellant intends to direct the particular attention of the appellate court in its brief.
 (c) If appellee desires to designate parts of the record for transmission not designated by appellant, appellee shall, contemporaneously with the filing of appellee's brief in the appellate court and service of that brief upon appellant, file with the clerk of the trial court and serve upon appellant a designation of those parts of the record desired by appellee. If appellee does not wish to designate additional portions of the trial court

ignation of Record does not include the hearing transcript. Wife, as the appealing party, bore the burden of providing this Court with a complete record on which it could base a decision. *Thomas v. Thomas*, 983 P.2d 717, 721 (Wyo.1999). That duty encompasses designation for transmission to this Court of all parts of the district court record pertinent to the issues raised. *Orcutt v. Shober Investments, Inc.*, 2003 WY 60, ¶¶ 9–11, 69 P.3d 386, 389–90 (Wyo.2003); W.R.A.P. 3.05(b). Without a transcript, we cannot review the factual basis for the district court's discretionary ruling. We summarily affirm the district court's order in Case No. 06–10.

## CONCLUSION

[¶ 27] In Case No. 05–237, the district court's order that Husband was to pay Wife $40,000 pursuant to Article III, Paragraph 4, of the Agreement is reversed and remanded for the amount owed to be increased $10,000 for a total amount of $50,000. The district court's order in that case is affirmed in all other respects. Case No. 06–10 is affirmed.

record, then such a certification shall be made to the clerk of the trial court.

(d) Appellant may make an additional designation of record within the time any reply brief is to be filed and served.