Karen McGHEE and Jeffrey McGhee,
Appellants (Plaintiffs),

v.

Peter E. RORK, M.D., Appellee
(Defendant).

No. 98–163.

Supreme Court of Wyoming.

March 31, 1999.

David G. Lewis, Jackson, Representing Appellants.

Jeffrey C. Brinkerhoff and Hampton K. O'Neill of Brown, Drew, Massey & Sullivan, Casper, Representing Appellee.

Before LEHMAN, C.J., and THOMAS, MACY, GOLDEN and HILL, JJ.

MACY, Justice.

Appellants Karen McGhee and Jeffrey McGhee appeal from the judgment which was entered after the jury returned a verdict in favor of Appellee Peter Rork, M.D.

We affirm.

## ISSUES

The McGhees state three issues on appeal:

1. Whether the District Court abused its discretion in the denial of the plaintiffs' Motion to Transfer Venue; and by its failure to excuse for cause certain jurors who were subject to challenge under Wyoming Statute § 1–11–203.

2. Whether the District Court abused its discretion by disallowing the cross examination of the Defendant Dr. Rork's clinical partner on his observations of the pre-surgical condition of the Plaintiff Karen McGhee.

3. Whether the District Court erred as a matter of law by refusing to instruct the jury with the Wyoming Pattern Jury Instruction on causation.

## FACTS

On September 7, 1995, Karen McGhee, a recovery room nurse at St. John's Hospital in Jackson, suffered an injury to her right knee while she was pushing a gurney with a patient on it. A few weeks later, she noticed that her right knee would not extend completely, and she consulted with Dr. Rork, a board certified orthopedic surgeon. He took a history from Karen and examined her knee. He told her that she had a "bucket handle" tear of the meniscus. According to Dr. Rork, when the meniscus is torn, "it can develop a frayed edge and then go on to a free flap of an edge" which prevents the knee from extending completely. Over the course of time, the joint surface can become rough to the point "where you actually erode all the articular cartilage off the joint."

Dr. Rork ordered an MRI, and the MRI confirmed that Karen had a tear in the meniscus but showed that the tear was in the anterior horn of the lateral meniscus. Dr. Rork performed arthroscopic surgery on September 29, 1995, to repair the tear. After the surgery, Karen developed what appeared to be a femoral nerve palsy or weakness in the quadriceps muscle of her leg. Dr. Rork referred her to a specialist, who confirmed that she had a femoral nerve palsy.

The McGhees filed suit against St. John's Hospital and Zimmer, Inc., the manufacturer of the machine used during Karen's surgery. Nine months before the trial, the McGhees named Dr. Rork as a defendant as well. They settled with the hospital and Zimmer but proceeded to trial against Dr. Rork.

Six business days before the trial, the McGhees filed a motion to transfer venue, claiming that the jury pool in Teton County had been poisoned by publicity about Dr. Rork's plans to build an outpatient surgery center and about a newly approved procedure he had been chosen to perform on arthritic knees. They also argued that twenty-one people who were in the prospective juror pool were potentially biased because they or their family members of the first degree had been Dr. Rork's patients. The trial court did not grant the McGhees' motion; however, it added thirty people to the pool of potential jurors.

A jury was chosen, and both attorneys passed the panel for cause. At the end of the trial, the jury returned a verdict finding that Dr. Rork had not been negligent in treating Karen. The McGhees filed a motion for a new trial, and the trial court denied their motion. They appeal to this Court.

## DISCUSSION

### A. Challenges for Cause

The McGhees insist that the trial court abused its discretion by denying their for-cause challenges against some of the jurors. Although none of the challenged individuals were seated on the jury, the McGhees maintain that they were forced to use their peremptory challenges when these particular veniremen should have been excused for cause.

W.R.C.P. 38(a) affords the right to a jury trial in this case, providing that "issues of fact arising in actions for the recovery of money only ... shall be tried by a jury unless a jury trial be waived." A proper demand for a jury trial was made by the McGhees. Further, a potential juror may be challenged for cause if that person "has formed or expressed an opinion as to the guilt or innocence of the accused, or is biased or prejudiced for or against the accused."

Wyo. Stat. Ann. § 7–11–105(a)(ii) (Michie 1997).

■ This Court recently quoted the test which a trial court must apply in determining whether a juror should be dismissed for cause:

"The test to be applied in determining whether a prospective juror should be dismissed for cause is whether that person would render a fair and impartial verdict based on the evidence presented at trial and the instructions given by the court. Whether a juror is biased is a question of fact for the trial judge. A trial judge's decision will only be reviewed for an abuse of discretion."

*Prindle v. State*, 945 P.2d 1180, 1182 (Wyo. 1997) (quoting *Kerns v. State*, 920 P.2d 632, 635 (Wyo.1996) (citations omitted)). We will not conclude that an abuse of discretion occurred if we determine that the trial court could reasonably have concluded as it did. *Gayler v. State*, 957 P.2d 855, 857 (Wyo. 1998).

■ The McGhees claim that three members of the jury pool should have been dismissed for cause because one member was a potential future employee of Dr. Rork, one potential juror had family members who had been patients of Dr. Rork and his partners and who were likely to be patients again in the future, and one person had a previous and potential future doctor/patient relationship with Dr. Rork. The McGhees challenged these veniremen for cause, but the trial court denied the challenges, and the McGhees were forced to use their peremptory challenges against them. At the end of the jury selection process, however, the McGhees' attorney passed the jury panel for cause. "When a defendant passes a jury panel for cause, he waives his claim to reversible error." *Prindle*, 945 P.2d at 1182. Because the McGhees accepted the jury as it was impaneled, they cannot establish reversible error. 945 P.2d at 1182–83.

## B. Transfer of Venue

The McGhees contend that the trial court abused its discretion by denying their motion to transfer venue. Dr. Rork responds that the trial court properly denied the motion because it failed to show the requisite prejudice against the McGhees or their ability to obtain a fair trial in Teton County.

Our well established standard of review for determining whether a trial court abused its discretion is stated as follows:

A court does not abuse its discretion unless it acts in a manner which exceeds the bounds of reason under the circumstances. In determining whether there has been an abuse of discretion, the ultimate issue is whether or not the court could reasonably conclude as it did.

*Hilterbrand v. State*, 930 P.2d 1248, 1250 (Wyo.1997). W.R.C.P. 40.1 governs motions to transfer venue. That rule provides in pertinent part:

(a) Transfer of Trial.

(1) The court upon motion of any party made within 15 days after the last pleading is filed shall transfer the action to another county for trial if the court is satisfied that there exists within the county where the action is pending such prejudice against the party or the party's cause that the party cannot obtain a fair and impartial trial, or that the convenience of witnesses would be promoted thereby. All parties shall have an opportunity to be heard at the hearing on the motion and any party may urge objections to any county. If the motion is granted the court shall order that the action be transferred to the most convenient county to which the objections of the parties do not apply or are the least applicable, whether or not such county is specified in the motion. After the first motion has been ruled upon, no party may move for transfer without permission of the court.

W.R.C.P. 40.1(a)(1).

The McGhees claim that the pretrial publicity prejudiced their ability to convene an impartial jury. In April of 1997, two articles appeared in the local newspaper about the plan to open an outpatient surgery center across the street from St. John's Hospital. Although the articles stated that the doctors—Dr. Rork being one of them—would provide a cheaper alternative to the hospital,

they also stated that such a center could be very harmful to the hospital. The newspaper also ran a couple of articles in September of 1997 about the fact that Dr. Rork was one of 250 doctors worldwide who had been chosen to perform a newly approved experimental knee-cartilage surgery.

■ We have adopted a two-pronged test for determining whether a change of venue should be granted because of pretrial publicity. "First, the nature and extent of the publicity must be considered; second, the difficulty or ease in selecting a jury must be considered along with the amount of prejudice which actually appears during *voir dire* examination." *Murry v. State,* 713 P.2d 202, 208 (Wyo.1986). In the case at bar, none of the articles complained of pertained to this case in any way. The publicity about the proposed surgery center was not necessarily favorable to Dr. Rork because many people in Jackson Hole may have perceived it as being a serious threat to the hospital and to the community. We hold that the publicity about Dr. Rork's professional plans and accomplishments which preceded this case had nothing to do with the case and did not prejudice this proceeding.

■ Regarding the McGhees' concern that so many of the potential jurors or their families had been Dr. Rork's patients, we conclude that this fact alone was not sufficient to require the venue to change. As we said in *Murry:* "We know of no rule of law that mandates that a prospective juror be excused just because he knows a party, a witness or some other principal in the trial. If there were such a rule, a change of venue would be required in virtually every case in Wyoming." 713 P.2d at 207. It is an undeniable fact that the small communities in Wyoming breed many acquaintances within their populations. As a result, potential jurors are often going to have some sort of familiarity with the parties. Such acquaintances do not necessarily create unfair prejudices. The *voir dire* process is designed to detect prejudices which may be present and to eliminate them. *See Murry,* 713 P.2d at 208; *Shaffer v. State,* 640 P.2d 88, 103 (Wyo.1982). In our opinion, that process worked in this case.

## C.  Expert Testimony

The McGhees claim that the testimony from Kenneth Lambert, M.D., an orthopedic surgeon, with regard to his thoughts on whether the meniscus tear would have caused the knee to lock was improperly limited. Dr. Rork counters that the excluded testimony was impermissible because it had not been designated and was surprise standard-of-care opinion.

■ The trial court has broad discretion in making its evidentiary rulings, and we will not overturn its decisions in the absence of a clear abuse of discretion. *Hermreck v. State,* 956 P.2d 335, 339 (Wyo.1998). Once a trial court has ruled on whether to allow expert testimony, this Court will overturn that determination in only extreme cases where a clear indication exists of an abuse of discretion which resulted in prejudicial error. *Stauffer Chemical Company v. Curry,* 778 P.2d 1083, 1099 (Wyo.1989).

Dr. Lambert saw Karen as a patient just a few days after her surgery because Dr. Rork was out of town and she had been experiencing pain and swelling in her right leg. Dr. Lambert reviewed the videotape of the surgery to "be sure there hadn't been an injury to the [peroneal] nerve."

The McGhees designated Dr. Lambert as a treating physician who would "testify as to his observations, diagnoses, treatment, and opinions about Karen McGhee's condition." They did not designate him as a standard-of-care witness. The McGhees' attorney asked Dr. Lambert if he saw anything during his review of the videotape which could have caused Karen's knee to lock. Dr. Rork's attorney objected, arguing that this was an attempt to elicit expert testimony to show Dr. Rork was negligent for performing an unnecessary surgery and that this testimony constituted impermissible standard-of-care testimony. The trial court agreed and sustained the objection. A few pages later in the trial transcript, however, Dr. Lambert stated:

> [W]hen you're bringing in an arthroscope, trying to find something that explains what the patient symptoms were . . . .

You're asking me what—before what could I see that could cause it to lock. And with the arthroscope it's very hard to be sure because you have basically inflated the joint; and so a lot of times things that might stick in the joint aren't there anymore, just by the distortion of filling ... it with fluid.

So it's sometimes difficult to find something that causes a knee to lock or to be sure that it is.

 The McGhees sought to introduce standard-of-care testimony from a witness whom they had designated as a treating physician. Even though the trial court sustained the objection to the elicited testimony, it ultimately came in when Dr. Lambert testified that, with the arthroscope, it is very difficult to find something which is causing a knee to lock or to be sure that the knee is locking. Without having an offer of proof from the McGhees' attorney, it appears to us that their question was answered. They certainly have not shown a clear indication that there was an abuse of discretion which resulted in prejudicial error.

### D. Causation Instruction

The McGhees allege that the trial court improperly instructed the jury on the Wyoming law of causation. Dr. Rork claims that this issue is moot because the jury never reached the issue of causation.

The verdict form which was given to the jury provided in pertinent part:

1. Was the Defendant, Peter Rork, M.D., negligent as that term has been defined in these instructions?

Answer: Yes ———— No ————

If your answer is "no", *stop*. Sign the verdict form and deliver it to the bailiff. If your answer is "yes", continue by answering question 2.

2. Do you find the negligence of Peter Rork, M.D. was a proximate cause of any damages sustained by Karen McGhee?

Answer: Yes ———— No ————

The jury answered the first question "no." It, therefore, was not allowed to proceed to the second question. The issue of whether the jury was properly instructed on

Wyoming law of causation is, accordingly, moot, and a determination on this issue is not necessary. *Bard Ranch Co. v. Frederick*, 950 P.2d 564, 566 (Wyo.1997).

Affirmed.