MATHESON DRILLING, INC.,
a Wyoming corporation,
Appellant (Plaintiff),

v.

Alfred and Mary PADOVA, husband and wife, Appellees (Defendants).

No. 99–203.

Supreme Court of Wyoming.

May 4, 2000.

Representing Appellant: James L. Edwards of Stevens, Edwards & Hallock, P.C., Gillette, Wyoming.

Representing Appellees: Daniel B. Bailey and R. Douglas Dumbrill of Lubnau, Hand & Bailey LLC, Gillette, Wyoming.

Before LEHMAN, C.J., and THOMAS, MACY, GOLDEN, and HILL, JJ.

MACY, Justice.

Appellant Matheson Drilling, Inc. appeals from the district court's order granting it a limited judgment against Appellees Alfred Padova (Alfred) and Mary Padova (Mary).

We affirm.

## ISSUES

Matheson Drilling presents the following issues for our review:

A. Whether there was sufficient evidence presented to the court to support the finding that Matheson was negligent?

B. Whether the court properly assessed the amount owing to Matheson for the services provided to the Padovas?

C. Whether the court should ... have awarded attorney fees to Matheson?

## FACTS

Alfred and Mary were purchasing property in Campbell County from Le Roy Van Buggenum under a contract for deed. In the fall of 1996, Alfred contacted Trusty Matheson (Trusty) of Matheson Drilling about having a water well drilled on the property. Trusty and Alfred orally agreed that Matheson Drilling would drill, ream, case, and gravel pack a well on the Padovas' property for the price of $12 per foot plus materials.

Matheson Drilling began drilling the well on November 13, 1996. It drilled to a depth of approximately 500 feet. Alfred apparently asked about the well's production. Trusty claimed that he told Alfred the well could produce "as little as a gallon or two a minute." Alfred maintained that Trusty told him the well would produce four to five gallons per minute. In any event, although the Matheson Drilling representatives wanted to drill deeper, Alfred apparently directed them to stop drilling. Matheson Drilling reamed out the well and cased it to a depth of approximately 460 feet. Matheson Drilling then gravel packed the well and injected a great deal of water into the well to remove the drilling mud. The Padovas paid Matheson Drilling $5,500.

Alfred placed a pump on the well in the fall of 1997, but he was unable to pump water to the surface. He contacted Matheson Drilling, and it returned to the well site. Matheson Drilling removed thirty feet of gravel from inside the casing at the bottom of the well and attempted to seal the bottom of the well. Its efforts to make the well produce adequate water were unsuccessful, and it decided to deepen the well. Unfortunately, while Matheson Drilling was attempting to deepen the well, it broke the casing, effectively ruining the well. Shortly thereafter, Matheson Drilling drilled and completed a second well on the Padovas' property. The parties did not discuss the terms under

which Matheson Drilling would drill the second well. The second well was approximately 600 feet deep, and the Padovas were able to use the second well for their domestic water needs. Matheson Drilling returned later to make some repairs to the second well.

Matheson Drilling billed the Padovas for the balance due for drilling the first well, the cost for attempting to make the first well productive, the drilling of the second well, and the repairs to the second well. The Padovas did not pay Matheson Drilling, and Matheson Drilling filed a lien against the property, listing the Padovas and Van Buggenum as the owners of the property.

Matheson Drilling filed a complaint in the district court against the Padovas and Van Buggenum, seeking foreclosure of its lien, damages, and recovery of its costs and attorneys fees. The Padovas filed an answer and counterclaim, alleging breach of contract and negligence. Matheson Drilling and the Padovas subsequently stipulated to the dismissal of Van Buggenum from the case.

Matheson Drilling filed a motion for a summary judgment. The district court denied the motion and held a bench trial. After Matheson Drilling rested its case, the district court directed a partial verdict in favor of the Padovas as to Matheson Drilling's claim for the remaining balance due for drilling the first well. After the trial concluded, the district court issued a decision letter, announcing a limited verdict in favor of Matheson Drilling. The district court found that Matheson Drilling was negligent with regard to its work on the first well and the first well was of no value to the Padovas. The district court determined that the value of Matheson Drilling's services and the materials for the second well was $8,558, subtracted $5,500 to account for the amount the Padovas paid for the first well, and concluded that Matheson Drilling was entitled to $3,058 for its work on the second well. The district court used the $3,058 amount and determined that Matheson Drilling was entitled to a judgment of $3,189.46 by adding $255 for the repairs Matheson Drilling performed on the second well, subtracting $200 to account for the cost of plugging and abandoning the

first well, and adding $55 for costs. The district court refused, however, to award Matheson Drilling its attorneys fees. Matheson Drilling subsequently appealed to the Wyoming Supreme Court.

## DISCUSSION

Matheson Drilling maintains that the district court erred in concluding that it was negligent in its performance of the work on the first well and in determining the amount the Padovas owed it. We have frequently stated our standard for reviewing a judgment entered by a court after a bench trial:

> The factual findings of a judge are not entitled to the limited review afforded a jury verdict. While the findings are presumptively correct, the appellate court may examine all of the properly admissible evidence in the record. Due regard is given to the opportunity of the trial judge to assess the credibility of the witnesses, and our review does not entail weighing disputed evidence. Findings of fact will not be set aside unless the findings are clearly erroneous. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. We review a district court's conclusions of law *de novo* on appeal.

*Springer v. Blue Cross and Blue Shield of Wyoming*, 944 P.2d 1173, 1175–76 (Wyo.1997) (citations omitted); *see also Saulcy Land Company v. Jones*, 983 P.2d 1200, 1203 (Wyo.1999).

■ Construction contracts contain an implied warranty that work will be performed in a skillful, careful, diligent, and workmanlike manner. *Cline v. Sawyer*, 600 P.2d 725, 732 (Wyo.1979). Determining that Matheson Drilling was negligent in the performance of its work on the first well, the district court stated:

> The defendants point out several items that they feel indicate that the plaintiff was negligent. They first point to the fact that the plaintiff got the drill bit stuck in the hole on the first well. However, no testimony would indicate that there was negli-

gence in this. The defendants point to the fact that the casing was not on the bottom of the hole. However, the expert testified that this can happen without fault or negligence. However, if there is clearly fault of the plaintiff in this case it would be in the information given to the defendant, Mr. Padova, that the well first drilled was sufficient to produce one to two gallons per minute. Mr. Padova testified that the plaintiff indicated four to five gallons per minute. In either case one to two gallons per minute would be a producing well. It would appear that plaintiff cased a dry hole. The subsequent movement of the casing is also indicative of further problems. This is not exactly clear what the problems are, but the sinking and moving of the casing is not proper. In essence, the court feels that the first well drilled by the plaintiff was of no value to the defendants due to the plaintiff's negligence.

The undisputed trial evidence indicated that well drillers do not generally guarantee that a well will produce water. *See Atlas Construction Co., Inc. v. Aqua Drilling Company*, 559 P.2d 39, 41 (Wyo.1977) (holding that there is no implied warranty that a driller will find and produce water when he agrees to drill a water well). Trusty admitted that he told Alfred the well may produce as little as one to two gallons of water per minute. He did not, however, conduct any tests to determine what the actual production of the well would be. The undisputed evidence showed that the first well did not produce sufficient water for the pump to bring water to the surface. Accordingly, the first well could be characterized as a dry hole. Both parties presented testimony indicating that a driller generally should not case a dry hole.

■ The trial evidence also showed that the casing moved or settled after Matheson Drilling placed it in the first well and such movement or settling was not proper. Furthermore, the accumulation of gravel at the bottom of the well compromised the well's productivity. The Padovas' expert witness testified that the gravel could have accumulated at the bottom of the well because Matheson Drilling did not ensure that the

casing was placed at the bottom of the well bore or because there was a failure in the casing near the bottom of the well. A portion of the gravel that Matheson Drilling used to pack the outside of the casing apparently settled to the bottom of the casing and came up inside the well. Because the gravel pack settled, it was more likely that the perforations in the casing, which were designed to allow water to run into the well, would become plugged by debris and sediments, thereby undermining the ability of the well to produce water. Applying our standard for reviewing factual determinations by district courts, we conclude that the evidence presented at the trial was sufficient to support the district court's determination that Matheson Drilling negligently performed its work on the first well and the well was of no value to the Padovas.

■ The district court ruled that Matheson Drilling was entitled to be paid for its work on the second well pursuant to an unjust enrichment theory.

"The phrase 'unjust enrichment' is used in law to characterize the result or effect of a failure to make restitution of, or for, property or benefits received under such circumstances as to give rise to a legal or equitable obligation to account therefor. It is a general principle, underlying various legal doctrines and remedies, that one person should not be permitted unjustly to enrich himself at the expense of another, but should be required to make restitution of or for property or benefits received, retained, or appropriated, where it is just and equitable that such restitution be made, and where such action involves no violation or frustration of law or opposition to public policy, either directly or indirectly."

*R.O. Corporation v. John H. Bell Iron Mountain Ranch Company*, 781 P.2d 910, 912 (Wyo.1989) (quoting 66 Am.Jur.2d *Restitution and Implied Contracts* § 3 at 945 (1973)); *see also Clark v. Gale*, 966 P.2d 431, 438–39 (Wyo.1998).

The district court determined the total amount due on the second well by calculating the value of Matheson Drilling's labor and materials on the second well and deducting

the amount the Padovas paid to Matheson Drilling for the first well. Matheson Drilling argues that the Padovas should not have received a credit for the amount they paid on the first well. We conclude that the district court properly calculated Matheson Drilling's damages in this case. As we stated above, there was sufficient evidence to support the district court's conclusion that the first well was of no value to the Padovas because Matheson Drilling had negligently performed its work. Consequently, the Padovas did not owe Matheson Drilling for its work on that well. The amount the Padovas paid to Matheson Drilling for the first well was, therefore, properly deducted from the amount due on the second well.

■ Matheson Drilling also maintains that the district court erred by refusing to award it attorneys fees. The Padovas argue that the district court properly determined that Matheson Drilling was not entitled to recover its attorneys fees. We agree with the Padovas.

■ Wyoming subscribes to the American rule regarding recovery of attorneys fees. *Board of County Commissioners of County of Platte v. State ex rel. Yeadon*, 971 P.2d 129, 132 (Wyo.1998). Under that rule, each party is generally responsible for its own attorneys fees. *Id.* A prevailing party may, however, be reimbursed for its attorneys fees when express statutory or contractual authorization exists for such an award. *Id.*

Matheson Drilling claims that it was entitled to an attorneys fees award pursuant to Wyo. Stat. Ann. § 29–3–103(a)(vi) (LEXIS 1999). Wyo. Stat. Ann. § 29–3–103(a) (LEXIS 1999) states:

(a) Every person who works upon or furnishes material, whether incorporated into the real property or not, under contract with the owner of any interest in real estate or with an agent, trustee or receiver of an owner has a lien to secure payment for:

(i) Constructing, altering, digging, drilling, driving, boring, operating, completing or repairing any wells, mines or quarries; or

(ii) Altering, repairing or constructing any oil derrick, oil tank or any pipelines;

(iii) Transportation and related mileage charges plus interest from the date due;

(iv) Advertising, selling and preparing for sale;

(v) Sheriff's fees; and

(vi) Attorney's fees and other costs of collection.

The lien statute obviously authorizes awards of attorneys fees in appropriate cases. Nevertheless, the district court ruled: "Regardless of whether a lien claim can properly be made for this unjust enrichment claim, the court will disallow any recovery to the plaintiff of attorney's fees."

■ Matheson Drilling set out alternate theories in its complaint to establish that it was entitled to be paid for the services it rendered to the Padovas. Its causes of action included foreclosure of the lien and quantum meruit or unjust enrichment. The district court granted relief to Matheson Drilling pursuant to its unjust enrichment claim. The lien statute clearly applies to only contract claims. *See Adobe Oil & Gas Corporation v. Getter Trucking, Inc.*, 676 P.2d 560, 562 (Wyo.1984). Consequently, the lien statute did not apply to Matheson Drilling's claim for payment for its work on the second well, and Matheson Drilling was not entitled to be awarded attorneys fees on that basis.

Affirmed.