2008 WY 18

**THREE WAY, INC., a Wyoming Corporation, Appellant (Plaintiff),**

v.

**BURTON ENTERPRISES, INC., a Wyoming Corporation, Appellee (Defendant).**

Burton Enterprises, Inc., a Wyoming Corporation, Appellant (Defendant),

v.

Three Way, Inc., a Wyoming Corporation, Appellee (Plaintiff).

Nos. S–07–0139, S–07–0140.

Supreme Court of Wyoming.

Feb. 21, 2008.

Representing Appellant in case No. S-07-0139: Christopher M. Wages and Greg L. Goddard of Goddard, Wages & Vogel, Buffalo, Wyoming. Argument by Mr. Goddard.

Representing Appellee in case No. S-07-0139: Mark W. Gifford of Casper, Wyoming.

Representing Appellant in case No. S-07-0140: Mark W. Gifford of Casper, Wyoming.

Representing Appellee in case No. S-07-0140: Christopher M. Wages and Greg L. Goddard of Goddard, Wages & Vogel, Buffalo, Wyoming. Argument by Mr. Goodard.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

VOIGT, Chief Justice.

[¶1] This is a dispute in which, after a jury trial on some issues, and a bench trial

on other issues, the district court ordered specific performance of a contract for the construction of certain water and sewer mains. The plaintiff contractor (Three Way) sued for the value of its services or for specific performance of the contract. The defendant owner (Burton) counterclaimed for breach of contract and breach of the warranty of workmanship. After the jury found that Burton breached the contract, the district court found the contract to be unambiguous and ordered specific performance, rather than money damages. Three Way appealed that decision. Burton then cross-appealed, alleging that the jury had been improperly instructed and that the district court had erred in an evidentiary ruling. We affirm.

## ISSUES

[¶2]   1.   Whether the district court's judgment and order should be summarily affirmed because of Three Way's non-compliance with W.R.A.P. 7.01(e)(2)?

2.   Whether the district court abused its discretion in denying Three Way's motion for leave to amend its complaint?

3.   Whether the district court abused its discretion when it granted, in part, Burton's motion in limine?

4.   Whether the district court erred as a matter of law when it denied Three Way's motion to affirm the jury's verdict?

5.   Whether the district court abused its discretion in instructing the jury as to Three Way's duty of workmanship?

6.   Whether the district court abused its discretion by admitting evidence of Three Way's claimed money damages?

## FACTS

[¶3]   Burton planned to develop property it owned in Buffalo, Wyoming. On April 8, 2003, Three Way submitted to Burton a bid for $353,604.30 for the construction and installation of certain water and sewer mains related to that development. Burton did not

accept that bid. Instead, the parties entered into a written agreement whereby Three Way was to perform the work in exchange for the following consideration:

10.   Upon completion of the above described work by Contractor and when such work is approved by Owner and Engineer, Owner will convey the following described property to Contractor:

(a) Lot 20 and Lot 19 of the Village West Estates Subdivision as described on Exhibit A;

(b) Certain property in the City of Buffalo, Wyoming consisting of approximately 7.81 acres more particularly described as

See Exhibit B

(c) A 20 foot easement along the East/West boundary of the South End of the Village West Estates Subdivision and Village West Mobile Home Park for future construction of a Sewer lift line in the Mobile Home Park Extension for the purpose of a future hook up to City sewer. Easement will follow lot line to the South East manhole.

At such time and place as mutually agreed to by the parties in accordance with the terms of this agreement, Owner shall deliver to Contractor a good and sufficient deed, subject to all real estate taxes for 2003, exceptions, reservations, covenants, conditions, restrictions, easements, rights of way, reservations and rights of record and subject to any state of facts which would be disclosed by an accurate survey or physical inspection of the premises and subject to building, zoning, subdivision or other regulations of any private or governmental entity.[1]

. . . .

12.   The above described property will be conveyed "as is," in its present condition. There are no representations, covenants or agreements by Owner or between the parties with reference to the quality, condition, or status of the property except as

1.   Some of the quoted language was inserted by handwritten interlineation, but such does not af-     fect any of the issues herein considered.

specifically set forth in this Agreement, and any such warranties are hereby disclaimed. Contractor is not relying upon any representations by Owner or Owner's agents as to any condition which Contractor deems to be material to Contractor's decision to enter into this Agreement.

[¶ 4] In addition to the disclaimers contained in paragraph 12 as set forth above, the Agreement also provided as follows:

17. This agreement contains the entire agreement between the parties. All prior representations made in the negotiations of this sale have been incorporated herein, and there are no oral agreements or representations between the Owner, Contractor, or their agents to modify the terms and conditions of this agreement. Contractor acknowledges and agrees that Contractor is not relying upon any representations of Owner or Owner's agents as to any condition of the property which Contractor deems to be material to Contractor's decision to enter into this Agreement. This Agreement may not be modified except by a written instrument signed by each of the parties.

[¶ 5] At the time the parties executed the agreement, Exhibit B was not attached. Two weeks later, however, Burton provided Exhibit B, in the form of an Affidavit of Lot Division, splitting off the 7.81 acre parcel mentioned in the agreement from a smaller commercial lot retained by Burton. Much of the present controversy was engendered by the fact that Exhibit B shows the 7.81 acres as a single undeveloped parcel, but Three Way contends that Burton had agreed to subdivide the parcel into seven developed lots, with a completed street access.

[¶ 6] After work under the agreement had commenced, Burton proposed additional work for Three Way to perform. Three Way agreed, and paragraph 10 of the agreement was amended, in pertinent part, to convey Lots 22 and 24, rather than Lots 19 and 20, to Three Way as additional compensation.[2]

The language concerning the 7.81 acre tract was not amended.

[¶ 7] As the project neared completion, high groundwater in the area caused excessive water to appear in valve boxes, requiring "trench plugs" or other remedial measures. Each party considered those remedial measures to be the responsibility of the other. A stalemate ensued, with Three Way refusing to fix the problem, and Burton refusing to convey the 7.81 acres. This lawsuit followed.

[¶ 8] Three Way fired the first volley in the litigation with the filing of a complaint on April 12, 2005, alleging breach of contract and unjust enrichment. Three Way sought monetary damages "in excess of $400,000.00," or alternatively, specific performance of the contract in the form of conveyance of the 7.81 acres. Burton's counterclaim alleged breach of contract and breach of warranty, both based upon the valve box water problem. On April 26, 2006, the district court set the matter for trial on July 17, 2006.

[¶ 9] On May 26, 2006, Three Way filed a motion to amend its complaint, seeking now to allege reformation of contract, breach of the written contract, breach of an oral contract, unjust enrichment, fraud in the inducement, and promissory estoppel. Generally, Three Way justified the motion on the ground that "[f]ollowing limited discovery in this matter, additional facts and evidence have surfaced, and Plaintiff needs to amend its *Complaint* in order to conform to the specific circumstances of this case." Burton's objection to the motion argued (1) the motion did not comply with W.R.C.P. 7(b) because it did not state its supporting grounds with particularity; (2) the motion was occasioned by undue delay, bad faith, dilatory motive and undue prejudice; (3) the allegations of the amended complaint were inconsistent; (4) the allegations of the amended complaint were known to Three Way prior to its filing of the original complaint; and (5) the proposed amendment did not have substantial merit and Three Way

2. The original written agreement did not mention Lot 19. The addition of Lot 19 is one of the interlineations mentioned in footnote 1 above. Apparently, the addition of Lot 19 was the com-

pensation for the additional work, eventually resulting in the formal amendment, but with the change to Lots 22 and 24.

had not come forward with convincing evidence supporting the new claims.

[¶ 10]   The district court held a pre-trial conference on June 12, 2006, at which time it denied both parties' motions for summary judgment and Three Way's motion to amend its complaint.   The pre-trial conference was not reported, so there is no transcript of the proceedings, but Three Way avers in its brief that its motion to amend was denied during that conference.   Likewise, the record contains no order denying the motion.   The only record of the denial and the rationale therefore is found in this sentence from the post-trial decision letter: "Plaintiff untimely requested permission to amend to plead fraud, but this was denied by the court."

[¶ 11]   The scheduled trial was to be bifurcated, in that the jury was to determine whether either party breached the contract, the value of Three Way's services, and the amount of Burton's damages if Three Way was found in breach.   Just before trial, Burton filed a motion *in limine* seeking to exclude any evidence regarding (1) the monetary value of Three Way's services, and (2) Burton's alleged promise to subdivide and improve the 7.81 acre parcel.   Succinctly stated, Burton argued that the unambiguous contract provided neither for the payment of monetary compensation, nor for subdivision and improvement of the parcel.   The motion was heard on the first day of trial, with the district court denying the motion as to evidence of the monetary value of Three Way's services, but granting the motion as to evidence of any promise to subdivide and improve the parcel.

[¶ 12]   The jury returned a verdict on the third day of trial.   It answered three special interrogatories finding that (1) Three Way did not breach the contract; (2) Burton did breach the contract; and (3) the value of Three Way's services was $315,604.   Three Way then filed a motion asking the district court to affirm the verdict, seeking a judgment in the amount of $315,604.   Burton opposed that motion on several grounds: (1) an unjust enrichment award is not available where a contract remedy exists; (2) the value amount did not discount the value of the two lots already conveyed to Three Way; and (3)

specific performance of the contract should entail only the additional conveyance of the 7.81 acre parcel.   A bench trial on the equitable issues was held on September 19, 2006.

[¶ 13]   The district court's decision letter was filed on December 12, 2006.   Finding that a contract remedy existed—conveyance of the 7.81 acre parcel—the district court declined to apply the equitable remedy of unjust enrichment.   Instead, it concluded that specific performance of the contract was the appropriate remedy.   It therefore denied Three Way's motion to affirm the jury verdict.   A judgment to that effect was entered on April 27, 2007.

## DISCUSSION

*Whether the district court's judgment and order should be summarily affirmed because of Three Way's non-compliance with W.R.A.P. 7. 01(e)(2)?*

[¶ 14]   W.R.A.P. 7.01 provides, in pertinent part, as follows:

The brief of appellant shall contain under appropriate headings and in the order indicated:

. . . .

(e) A statement of the case including:

. . . .

(2) A statement of the facts relevant to the issues presented for review with appropriate references to documents listed in the index of the transmitted record.

[¶ 15]   Burton cites *Habco v. L & B Oilfield Serv., Inc.*, 2006 WY 91, ¶ 3 n.1, 138 P.3d 1162, 1163 n.1 (Wyo.2006), for the proposition that failure to abide by the requirements of W.R.A.P. 7.01(e)(2), such as by citation to hundreds of pages of the record, rather than citation to specific pages, may result in the summary affirmance of the district court's judgment.   While we continue to adhere to that precept, and while Three Way's brief does, indeed, lack precision in its citation to the record, we are not inclined in this case to take the drastic route of a summary affirmance, because we are readily able to discern the relevant facts from the record.

*Whether the district court abused its discretion in denying Three Way's motion for leave to amend its complaint?*

[¶16] We review the denial of a motion for leave to amend a complaint under the following standards:

> A motion to amend a pleading under W.R.C.P. 15(a) "shall be freely given when justice so requires." However, a district court's decision to grant or deny a motion to amend is a matter best left to the judgment of that court and we will not reverse its decision absent an abuse of discretion. *Ekberg v. Sharp*, 2003 WY 123, ¶9, 76 P.3d 1250, 1253 (Wyo.2003).

*Ray v. St. Vincent Healthcare, Inc.*, 2006 WY 98, ¶7, 139 P.3d 464, 466 (Wyo.2006). We have defined an abuse of discretion in the context of the denial of a motion for leave to amend a complaint as follows:

> A court abuses its discretion when it acts in a manner which exceeds the bounds of reason under the circumstances. *Johnston v. Stephenson*, 938 P.2d 861, 862 (Wyo. 1997). The party who is attacking the trial court's ruling has the burden to establish an abuse of discretion, and the ultimate issue is whether the court could reasonably conclude as it did. *Id.*

*Doenz v. Sheridan County Bd. of County Comm'rs*, 949 P.2d 464, 465 (Wyo.1997).

[¶17] As we noted in reciting the facts above, Three Way filed its motion for leave to amend its complaint thirteen months after the original complaint was filed, and only seven weeks before trial. *See supra* ¶9. The district court denied the motion on the ground that it was untimely. Because whatever hearing on the motion that took place was not reported, the record contains no facts from which we could determine that the district court abused its discretion in denying the motion. The allegation contained in the motion that limited discovery had led to the discovery of "additional facts and evidence" is insufficient either to identify those facts and evidence, or to explain the long delay in their discovery. Furthermore, Burton's unrefuted response to the motion cites deposition testimony showing that Three Way was aware of these "additional facts and evidence" even before it filed its original complaint. Three Way has failed to establish that the district court abused its discretion in denying the motion for leave to amend its complaint.

*Whether the district court abused its discretion when it granted, in part, Burton's motion in limine?*

[¶18] "The purpose of a motion in limine is to obtain the court's pretrial ruling on the admissibility of evidence." *Reichert v. Phipps*, 2004 WY 7, ¶4 n.1, 84 P.3d 353, 355 n.1 (Wyo.2004). As with other evidentiary decisions, the question of whether or not to grant a motion in limine is left to the sound discretion of the district court. *Capshaw v. WERCS*, 2001 WY 68, ¶5, 28 P.3d 855, 857 (Wyo.2001). Evidence that is not relevant may be found inadmissible via a motion *in limine. Id.*

> Such decisions are within the sound discretion of the trial court and will not be disturbed absent a clear abuse of discretion.... Determining whether the trial court abused its discretion involves the consideration of whether the court could reasonably conclude as it did, and whether it acted in an arbitrary or capricious manner....
>
> A trial court's evidentiary rulings " 'are entitled to considerable deference,' " and will not be reversed on appeal so long as " 'there exists a legitimate basis for the trial court's ruling....' "

*Armstrong v. Hrabal*, 2004 WY 39, ¶10, 87 P.3d 1226, 1230 (Wyo.2004) (quoting *Dysthe v. State*, 2003 WY 20, ¶16, 63 P.3d 875, 883 (Wyo.2003)). The burden is upon the person losing the motion to establish an abuse of discretion. *Brown v. State*, 2005 WY 37, ¶12, 109 P.3d 52, 56 (Wyo.2005).

[¶19] Burton's motion *in limine* sought to prevent the admission of any evidence either of the monetary value of Three Way's performance, or any alleged promise by Burton to subdivide and improve the 7.81 acre parcel. The motion was heard on the first day of trial, with the first request being denied, and the second granted. The motion hearing was not reported and nothing in the record tells us the reasons for the court's

rulings. It may be presumed, however, that the jury was allowed to determine the monetary value of Three Way's services in case the district court decided to award unjust enrichment damages. Further, it may be presumed that evidence of the possible subdivision and improvement of the 7.81 acre parcel was found inadmissible because, if damages were limited to specific performance of the contract, those damages would be limited to conveyance of the 7.81 acre parcel "as is."

[¶ 20] We have already concluded that the district court did not abuse its discretion in denying Three Way's motion for leave to amend its complaint. Consequently, the only trial issues were breach of contract and unjust enrichment. The contract did not provide for the 7.81 acre parcel to be subdivided and improved, so that evidence was not relevant to the contract issue. Similarly, because the unjust enrichment damages were measured by the value of Three Way's services, such evidence was not relevant to that issue. Therefore, the district court did not abuse its discretion in granting Burton's motion *in limine* in that regard.

### Whether the district court erred as a matter of law when it denied Three Way's motion to affirm the jury's verdict?

[¶ 21] Three Way's motion to affirm the jury's verdict relied upon numerous Wyoming cases, citing the near sanctity of a jury's decision: *Knowles v. Corkill*, 2002 WY 119, ¶ 21, 51 P.3d 859, 865 (Wyo.2002) (great deference given to a jury verdict); *Francis v. Pountney*, 972 P.2d 143, 146 (Wyo.1999) (juries have great discretion in determining amount of damages to be awarded); *John Q. Hammons, Inc. v. Poletis*, 954 P.2d 1353, 1358 (Wyo.1998) (where law provides no measure for quantifying damages, amount to be awarded within jury's discretion); *Inter-Mountain Threading, Inc. v. Baker Hughes Tubular Servs., Inc.*, 812 P.2d 555, 558–59 (Wyo.1991) (judgment notwithstanding jury verdict should be sparingly granted); *Medlock v. Merrick*, 786 P.2d 881, 884 (Wyo.1990)

(jury verdict based upon sufficient evidence not to be overturned merely because appellate court would have concluded differently); *Crown Cork & Seal Co. v. Admiral Beverage Corp.*, 638 P.2d 1272, 1275 (Wyo.1982) (where more than one inference can be made from the evidence, the jury's choice is conclusive if supported by substantial evidence).

[¶ 22] While this recitation of the law is correct, we must agree with Burton that it does not control the result in the present case. This jury did not determine the amount of damages to be awarded to Three Way. Rather, the jury determined the monetary value of Three Way's services. The district court was faced with a decision whether to award contract damages or, alternatively, to award damages for the value of Three Way's services under the equitable theory of unjust enrichment. The jury merely was asked to determine the value of those services in case the district court pursued that latter course. It did not. Instead, it ordered specific performance of the contract. Consequently, there was no monetary jury verdict to affirm, and the district court did not err as a matter of law in that regard. This issue was, in reality, a plea for the district court to apply the doctrine of unjust enrichment, rather than to enforce the contract. Generally speaking, however, equitable remedies such as unjust enrichment are not available when an express contract exists. *Sowerwine v. Keith*, 997 P.2d 1018, 1021 (Wyo.2000).[3] In the instant case, the evidence revealed a fully integrated unambiguous contract, and that is what the district court rightly enforced.

### Whether the district court abused its discretion in instructing the jury as to Three Way's duty of workmanship?

[¶ 23] We review jury instruction issues under the following standard:

Jury instructions should inform the jurors concerning the applicable law so that they can apply that law to their findings with

---

**3.** Three Way relies upon *Landeis v. Nelson*, 808 P.2d 216, 217 (Wyo.1991) for the proposition that unjust enrichment may be an alternative basis for recovery in a contract case. However, while an express contract was alleged in *Landeis*, this Court's determination was based upon an "implied contract involved in 'unjust enrichment.'" *Id.; see also Id.* at 219 (Thomas, J., specially concurring).

respect to the material facts, instructions should be written with the particular facts and legal theories of each case in mind and often differ from case to case since any one of several instructional options may be legally correct, . . .

*Wheaton v. State,* 2003 WY 56, ¶ 20, 68 P.3d 1167, 1176 (Wyo.2003).

When examining the propriety of jury instructions, this Court reviews whether the instructions, taken as a whole, adequately and clearly advise the jury of the applicable law. The trial court is not obligated to give an instruction offered by a party as long as the jury is adequately instructed on the law as it pertains to that case. The trial court's ruling on an instruction will not constitute reversible error absent a showing of prejudice, and prejudice will not be said to result unless it is demonstrated that the instruction confused or misled the jury with respect to the proper principles of law. *Sellers v. Dooley Oil Transport,* 2001 WY 44, ¶ 9, 22 P.3d 307, 309 (Wyo.2001); *Cervelli v. Graves,* 661 P.2d 1032, 1036 (Wyo.1983). The burden is on the appellant to show prejudicial error. *Daley v. Wenzel,* 2001 WY 80, ¶ 29, 30 P.3d 547, 554–55 (Wyo. 2001).

*Parrish v. Groathouse Constr., Inc.,* 2006 WY 33, ¶ 7, 130 P.3d 502, 505 (Wyo.2006).

[¶ 24] This issue was raised by Burton in its cross-appeal. As to the warranty of workmanship implied in any construction contract, the district court instructed the jury as follows:

Construction contracts contain an implied warranty that work will be performed in a skillful, careful, diligent, and workmanlike manner.

The district court refused to give the following instruction proposed by Burton in its place:

Construction contracts contain an implied warranty that work will be performed in a skillful, careful, diligent, and workmanlike manner. The contract is not performed until the work accomplishes the agreed result. Where the principal object of the contract is to obtain a result, the builder is required to accomplish that pur-

pose or result. This duty of workmanlike performance imposes a corollary duty to warn the owner of defects in a project which would be likely to cause the work to fail if the contractor knew or reasonably should have known of these defects. When a contractor knows or should know of a defect, he does not perform his obligations in a workmanlike manner if he fails to notify the owner of the condition. A contractor is not relieved of this duty to disclose even if the specifications themselves are defective. Rather, the contractor must warn the owner of the defective specification. It is only when the owner instructs the contractor to continue according to the defective plans that the contractor will be immune from liability.

[¶ 25] Burton contends that the workmanship instruction given by the district court provided no guidance to the jury as to the applicability of this implied duty to the facts of this case. In particular, Burton alleges that, without being told about a contractor's duty to warn the owner about known defects in the plans or site conditions, the jury could not properly analyze the fact that, knowing early on in the project that the plans did not provide remediation for the groundwater problems, Three Way's president "kept [his] mouth shut about the problem."

[¶ 26] The first question that must be asked in deciding whether the jury should have been instructed as requested by Burton is whether the law supports the proposed instruction. We have said the following about the duty of building and construction contractors:

Building and construction contracts contain a warranty either express or implied that the work will be sufficient for a certain purpose and will be performed in a skillful, careful, diligent, and workmanlike manner. *Matheson Drilling, Inc. v. Padova,* 5 P.3d 810, 812 (Wyo.2000); *Arch Sellery, Inc. v. Simpson,* 360 P.2d 911, 912 (Wyo.1961). The contract is not performed until the work accomplishes the agreed result. *Arch Sellery,* 360 P.2d at 912; *see also Kansas Turnpike Authority*

*v. Abramson*, 275 F.2d 711, 713 (10th Cir. 1960) (where the principal object of the contract is to obtain a result, the builder is required to accomplish that purpose or result).

*Alpine Climate Control, Inc. v. DJ's, Inc.*, 2003 WY 138, ¶ 12, 78 P.3d 685, 689 (Wyo. 2003). Part of the duty of performing in a workmanlike manner is "the duty to warn the owner of defects in the project which would be likely to cause the work to fail if the contractor [knows] or reasonably should [know] of those defects." *Lewis v. Anchorage Asphalt Paving Co.*, 579 P.2d 532, 533 (Alaska 1978); *see also* 41 Am.Jur.2d *Independent Contractors* § 62 (2005). Two corollaries of this general rule have potential application to the case *sub judice:* (1) a contractor is not responsible for defects in the owner's plans and specification in the absence of some negligence on the contractor's part; and (2) the contractor has a duty to warn the owner of defects in subsurface conditions, where the contractor knows or should know of the defective conditions. *Harris v. Williams*, 679 So.2d 990, 993 (La. App.1996); *Parker v. Thornton*, 596 So.2d 854, 858 (Miss.1992); *Lewis*, 579 P.2d at 534; 13 Am.Jur.2d *Building and Construction Contracts* §§ 30–31 (2000); Annotation, *Duty of Contractor to Warn Owner of Defects in Subsurface Conditions*, 73 A.L.R.3d 1213 (1976 and Supp.2007); S. Bernstein, Annotation, *Construction Contractor's Liability to Contractee for Defects or Insufficiency of Work Attributable to the Latter's Plans and Specifications*, 6 A.L.R.3d 1394 (1966 and Supp.2007).

[¶ 27] Even if the proposed instruction was a correct statement of the law under the facts of this case, we must still determine whether Burton was prejudiced by the district court's refusal to give it. We conclude that Burton has not met its burden of proving that prejudice resulted. To begin with, the instruction that was given was not an incorrect statement of the law, and it was broad enough so as not to preclude Burton from presenting evidence, and arguing to the

jury, that the duty of workmanship included the duty to warn as outlined above. *See supra* ¶¶ 23–26. Indeed, much of the trial was taken up by testimony about the two sides' knowledge of both the groundwater problem and the lack of any remediation in the plans. Furthermore, Burton's counsel conceded during oral argument that trial counsel was, indeed, able to contend during closing argument that the implied warranty of workmanship included the duty to warn.[4] Perhaps most importantly, a reading of the entire trial transcript reveals that neither defect—the groundwater problem and the lack of a remediation plan—was known to Three Way but not known to Burton. In fact, the testimony suggests that the groundwater problem in the entire area was a patent defect, as opposed to some latent defect only discovered by Three Way upon beginning the project. For these reasons, we conclude that the district court did not abuse its discretion in refusing to instruct the jury as requested by Burton.

### *Whether the district court abused its discretion by admitting evidence of Three Way's claimed money damages?*

[¶ 28] This issue, raised by Burton, is the "flip side" of the third issue, which was raised by Three Way. *See supra* ¶¶ 2, 18–20. Prior to trial, Burton filed a two-part motion *in limine*. Burton sought to exclude evidence, first, of any alleged promise by Burton to subdivide and improve the 7.81 acre parcel, and second, of the monetary value of Three Way's services. The district court granted the motion as to the 7.81 acre parcel. That ruling was the subject of the third issue. *See supra* ¶¶ 2, 18–20. The district court denied the motion, however, as to the monetary value of Three Way's services. That is the issue, part of Burton's cross-appeal, that we now address.

[¶ 29] Because this is an issue involving the admission of evidence, the question once again is whether the district court abused its discretion. Burton contends that, inasmuch

---

4. The closing arguments were not reported, so there is no transcript from which we can determine how this issue was handled by either side. It is, of course, the appellant's duty to bring a complete record to this Court, and Burton was the appellant in regard to this issue. *Seherr–Thoss v. Seherr–Thoss*, 2006 WY 111, ¶ 26, 141 P.3d 705, 717 (Wyo.2006).

as the contract provided for compensation only in the form of a land transfer, and not in the form of a money payment, the value of Three Way's services was not relevant. Three Way responds that, because the issue of unjust enrichment remained "on the table," it was reasonable for the district court to allow evidence as to the value of its services, and to get the jury's opinion as to that value.

 [¶ 30] Succinctly stated, Burton's argument is that evidence of money amounts that Three Way had not been paid for work it performed prejudiced the jury against Burton, and resulted in the jury's conclusion that Burton, rather than Three Way, breached the contract. We conclude that Burton has not proven such prejudice. It is true that the jury found that Burton, not Three Way, breached the contract. But the evidence was uncontroverted that Burton had not conveyed to Three Way the 7.81 acre parcel, which was its contract obligation. To the contrary, there was considerable evidence that Three Way had not breached the contract, including, as noted above, that the groundwater problem was a patent defect, rather than a latent subsurface defect known only to Three Way, and that Burton, not Three Way, provided the plans and specifications that failed to deal with the groundwater problem. *See supra* ¶ 27. In the context of all the evidence, it is reasonable to conclude that the jury's decision as to breach was not swayed by the monetary evidence. We give considerable deference to the district court's evidentiary rulings, reversing only if the district court could not reasonably conclude as it did, and only if there is a reasonable probability that, absent an erroneous ruling, the verdict might have been different. *Schmid v. Schmid,* 2007 WY 148, ¶ 10, 166 P.3d 1285, 1288 (Wyo.2007); *McGhee v. Rork,* 978 P.2d 577, 579 (Wyo.1999). Burton has not shown either that the district court's ruling was erroneous under the circumstances, or that the necessary prejudice resulted from such ruling.

## CONCLUSION

[¶ 31] The district court correctly resolved this case by relying upon the written contract of the parties, as proven at trial. The district court did not abuse its discretion in considering the equitable option of unjust enrichment until such time as the evidence convinced it otherwise. None of the questioned rulings by the district court evinced an abuse of discretion or were contrary to law.

[¶ 32] We affirm.